Harold J. LEVY, on behalf of himself and all others similarly situated, Plaintiff–Appellant,

v.

Albert B. LEWIS, individually and as Superintendent of Insurance of State of New York, as Liquidator of Consolidated Mutual Insurance Company, Defendant–Appellee.

No. 7, Docket 80–7159.

United States Court of Appeals, Second Circuit.

Argued Sept. 3, 1980.

Decided Nov. 12, 1980.

Michael W. Sculnick, New York City (Vedder, Price, Kaufman, Kammholz & Day, Joseph D. Luksch, Jeffrey D. Mamorsky, Eric P. Simon, New York City, of counsel), for plaintiff–appellant.

Michael D. Brown, New York City (Stein, Rosen & Ohrenstein, Mark J. Bunim, New York City, of counsel), for defendant–appellee.

Before LUMBARD, MANSFIELD and MULLIGAN, Circuit Judges.

LUMBARD, Circuit Judge:

Appellant Levy represents a class of retired employees of the Consolidated Mutual Insurance Company (CMIC). Appellee Lewis, the New York State Superintendent of Insurance, has acted as Rehabilitator and Liquidator of CMIC under the authority of various state court orders. In his capacity as Liquidator, Lewis terminated certain retirement benefits of former CMIC employees including Levy and then sought approval of his action in the state courts. Levy subsequently filed this action for equitable relief in the District Court for the Southern District of New York alleging that termination of benefits constituted

both a breach of fiduciary duty and a violation of an employee welfare benefit plan under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1381 (1976 and Supp. II 1978). The district court found that no cause of action under ERISA had been stated and dismissed the complaint. We affirm dismissal of appellant's complaint because we hold first that Lewis is not an ERISA fiduciary and second that the district court should have abstained on the question of violation of the plan.

## I.

Harold Levy retired from CMIC, a mutual casualty insurer, in 1972. CMIC sponsored a number of programs providing retirees like Levy with various insurance benefits, including group life insurance, medical and health insurance (Blue Cross/Blue Shield) and major medical coverage. These benefits were provided through insurance policies held by CMIC on which premiums were paid annually out of general operating revenues.

In an attempt to salvage CMIC's worsening financial condition, beginning in November of 1978, Superintendent Lewis acted as Rehabilitator of CMIC and its subsidiary, Long Island Insurance Company, pursuant to a state court order. CMIC's position, however, further declined, and Levy instituted proceedings to liquidate CMIC as authorized by Section 526 of the New York Insurance Law.[1] On May 31, 1979, the New York Supreme Court ordered that CMIC be liquidated and that Lewis, as Superintendent of Insurance, be appointed Liquidator. Lewis was thereby granted title to all of CMIC's property.

In carrying out his statutory obligation to consolidate and preserve CMIC's assets for distribution to policyholders and general creditors, Lewis terminated the retirement benefits being provided to Levy and other retirees. Levy and four other retirees immediately filed with Lewis a Notice of Claim on behalf of all retirees pursuant to Section 544 of the New York Insurance Law, seeking restoration of benefits. On October 19, 1979, Lewis denied these claims and instituted special proceedings in New York Supreme Court in order to have his disallowance of the claims approved. On November 19, 1979, the Supreme Court referred the proceedings to a State Referee. A pretrial conference was held before the Referee, and discovery was begun.

Levy subsequently brought suit in the United States District Court for the Southern District of New York on behalf of all retirees. He alleged that Lewis's termination of retirement benefits violated ERISA because the provision of benefits constituted an "employee welfare benefit plan" under the statute, 29 U.S.C. § 1002(1)(A), and Lewis's termination 1) violated the terms of the plan, for which a remedy is afforded under 29 U.S.C. § 1132(a)(1)(B), and 2) amounted to a breach of fiduciary duty under 29 U.S.C. § 1104 since Lewis fell within the definition of an ERISA fiduciary, 29 U.S.C. § 1002(21). Levy asked for preliminary and permanent relief reinstating retirement benefits. After considering Levy's motion for preliminary relief and Lewis's cross–motion to dismiss for failure to state a claim, Judge Owen dismissed the suit. Judge Owen held that even if the benefits were being provided according to a qualified employee welfare benefit plan and even if Levy was a fiduciary of that plan— both of which propositions he doubted— there was nothing in ERISA which required

---

1. N.Y.Ins. Law § 526 (McKinney 1966). Article XVI of the Insurance Law sets out a detailed scheme for regulation of the rehabilitation, liquidation, conservation and dissolution of insurance companies. Section 526 authorizes the Superintendent to apply to the state courts for orders commencing these events. Section 514 outlines the content of the order of liquidation which includes imposition of certain obligations upon the Superintendent. Sections 517–24 enact the Uniform Insurers Liquidation Act. Other statutes specify priority of certain claims against the insolvent company, the proper means of disposition of assets, and requirements for proof and allowance of claims. The Superintendent also has the authority to promulgate regulations relating to rehabilitation and liquidation proceedings under Section 531.

that welfare benefits, funded year to year out of operating revenues, be continued in the event of liquidation or insolvency.

## II.

We agree with the district court that Levy's complaint should be dismissed, but we reach that result by a different route. In our opinion, Levy's first claim, that of a violation of the terms of an employee welfare fund, should have been left to the state courts for determination. Levy's claim of a breach of fiduciary duty raises a question which is exclusively a matter of federal determination, and therefore we reach that question, but decide it in favor of Superintendent Lewis.

■ There are three aspects of abstention doctrine relevant to this case.[2] In *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Supreme Court held that the federal courts should abstain from interfering with specialized, ongoing state regulatory schemes. *Burford* itself involved an order of the Texas Railroad Commission authorizing the drilling of oil wells. The Court found that the complex state system for regulation of the oil industry, involving administrative decision-making and judicial review, should be allowed to function without continual interference from the federal courts. "Delay, misunderstanding of local law, and needless federal conflict with the state policy" would be "the inevitable product of this double system of review." 319 U.S. at 327, 163 S.Ct. at 1104.

In keeping with *Burford's* concern with noninterruption of state administrative programs, the federal courts have abstained in numerous areas where state regulation involved matters of substantial state concern and where state policies were carried out in a statutorily established regulatory program by state officials. *See, e. g., Alabama Public Service Commission v. Southern Railway,* 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951) (state regulation of intrastate railroad passenger service); *Kelly Services, Inc. v. Johnson,* 542 F.2d 31 (7th 1976) (state regulation of employment agencies). Most important for our purposes, *Burford* abstention has been applied to state regulation of insurance. *See e. g., Smith v. Metropolitan Property and Liability Insurance Co.,* 629 F.2d 757 (2d Cir., 1980); *Meicler v. Aetna Casualty & Surety Co.,* 372 F.Supp. 509 (S.D.Tex.1974) *aff'd,* 506 F.2d 732 (5th Cir. 1975); *Mathias v. Lennon,* 474 F.Supp. 949 (S.D.N.Y.1979).

In this case, New York State has a complex administrative and judicial system for regulating and liquidating domestic insurance companies. *See* note 1 *supra.* The Superintendent of Insurance is an experienced state official who has been involved both in rehabilitating and liquidating CMIC. Liquidation in particular is an area in which the Superintendent's expertise is critical. Liquidation proceedings involve the adjustment of thousands of claims against the insurer by policyholders and those who claim under them, as well as claims by present employees, past employees, and general creditors. Moreover, the claims must be satisfied by marshalling the existing assets of the insolvent company and by reinsuring existing policies using a state fund established for this purpose.

It is also highly significant that the state scheme has been adopted pursuant to congressional authorization. In the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015, Congress mandated that regulation of the insurance industry be left to the individual states. Thus the administrative and judicial scheme erected by New York to regulate insurance companies, including that part enabling the institution and implementation of liquidation proceedings, operates pursuant to an express federal policy of noninterference in insurance matters. Federal courts have therefore been slow to

---

2. A fourth category, deriving from *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), is clearly inapplicable. *Pullman* abstention is proper where deferral to the state courts might allow the state to construe difficult issues of state law in a manner which avoids federal constitutional problems. Here, only federal statutory violations are alleged.

interrupt such schemes unless necessary, particularly when federal court action would impinge upon the area in which Congress has recognized the overriding interest of the States.

Finally, the liquidation process would be greatly impeded by subjecting it to two authorities. The experience of our own federal bankruptcy courts evidences the importance of consolidating all of the assets of an insolvent company and gathering all those who have claims against those assets in a single forum. As noted by the Eighth Circuit in *Motlow v. Southern Holding & Securities Corp.*, 95 F.2d 721, 725–26 (8th Cir.), *cert. denied*, 305 U.S. 609, 59 S.Ct. 68, 83 L.Ed. 388 (1938):

> Experience has demonstrated that, in order to serve an economical, efficient, and orderly distribution of the assets of an insolvent corporation for the benefit of all creditors and stockholders, it is essential that the title, custody, and control of the assets be entrusted to a single management under the supervision of one court. Hence other courts, except when called upon by the court of primary jurisdiction for assistance, are excluded from participation. This should be particularly true as to proceedings for the liquidation of insolvent insurance companies, for the reasons adverted to by Mr. Justice Cardozo in *Clark v. Williard*, 292 U.S. 112, 123, 54 S.Ct. 615, 620, 78 L.Ed. 1160. *See, also*, Glenn on Liquidation, pages 409, 410 §§ 278, 279, 280.

Appellant argues, however, that this case is not governed by those decisions in which abstention was ordered under *Burford* because most decisions applying *Burford* have involved complex issues of state law. We disagree. In *Burford* itself, violations of federal law were alleged. The claims there amounted to an attack on the reasonableness of the state administrative action. Thus federal review, while involving decision of a federal question, would have entailed a reconsideration of the state administrative decision, carrying with it the potential for creating inequities in the administration of the state scheme. *Burford* thus

suggests that proper respect for the expertise of state officials and the expeditious and evenhanded administration of state programs counsels restraint on the part of the federal courts.

Much the same is true of this case. While the claim for violation of an ERISA plan involves questions of federal law—whether a qualified ERISA plan existed and whether its terms were violated by termination of benefits following insolvency–the claim is almost identical to a state claim for breach of a contractual promise. Federal review of the Superintendent's treatment of such a claim would create a potential for piecemeal review, for continual interruption of liquidation proceedings and for unequal treatment of liquidation claimants. We think it best then that the federal questions involved be left in the first instance to the Superintendent with review available in the state courts and ultimately in the United States Supreme Court. The Superintendent stands in as good if not a better position than the federal courts to make an initial determination of the existence of an agreement with retirees, its terms, and the weight it should be given relative to other claims against the insolvent company.

A second type of abstention relevant here is that derived from the opinion in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Younger* held that a federal court should not entertain suits challenging state action when the state has already initiated proceedings in the state courts in which the plaintiff is able to raise federal claims. Most recently, in *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), the Supreme Court has stated that the principles supporting *Younger* may justify abstention in civil as well as criminal areas. The Court noted that *Younger* principles of comity express:

> . . . a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff. *Samuels v. Mackell*, 401 U.S. 66, 69, 91 S.Ct. 764, 766, 27 L.Ed.2d 688 (1971). That

policy was first articulated with reference to state criminal proceedings, but as we recognized in *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), the basic concern–that threat to our federal system posed by displacement of the state courts by those of the National Government–is also fully applicable to civil proceedings in which important state interests are involved.

442 U.S. at 423, 99 S.Ct. at 2377.

Thus, in *Moore v. Sims*, the Court noted that *Younger* abstention would be extended not only to state proceedings "in aid of and closely related to criminal statutes," 442 U.S. at 423, 99 S.Ct. at 2377, quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975), but also to other proceedings in which the state seeks to vindicate its "vital concerns" such as enforcement of contempt proceedings as in *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) and the fiscal integrity of public assistance programs as in *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977). While the Supreme Court has not yet applied *Younger* to state insurance company liquidation proceedings such as are at issue here and while these proceedings are perhaps more remote from the criminal process than other proceedings in which *Younger* has been applied, *Younger's* concerns with comity and with a state's enforcement of important state interests in its own courts seem equally applicable. Here the state is a party to proceedings in its own courts, seeking to carry out regulatory duties left to it by Congress. Thus, despite some differences, the teachings of *Burford* and *Younger* support application here of the policies behind these examples of abstention doctrine.

In any event, this case falls squarely within another category of abstention, that recognized in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), involving "the contemporaneous exercise of concurrent jurisdictions." *Id.* at 817, 96 S.Ct. at 1246. *See* C. Wright, A. Miller &

E. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters*, § 4247 (1978). In *Colorado River*, the Supreme Court found that even where none of the other abstention categories applied, federal courts ought to refuse to decide cases when considerations of "[w]ise judicial administration giving regard to conservation of judicial resources and comprehensive disposition of litigation," 424 U.S. at 817, 96 S.Ct. at 1246, quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952), require abstention. While the Court recognized "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," 424 U.S. at 817, 96 S.Ct. at 1246, which distinguishes cases of federal–state from wholly federal concurrent jurisdiction, it held that in certain limited circumstances, the same considerations of judicial administration justify abstention in the former as in the latter category of cases.

We believe that such circumstances are present here. In *Colorado River*, the Court held that abstention was appropriate in a suit brought by the federal government to settle water rights respecting the Colorado River, when state proceedings to settle such rights were already underway in state court. The Supreme Court relied upon decisions holding that courts first assuming jurisdiction over property may exercise their jurisdiction in proceedings to dispose of the property to the exclusion of other courts. 424 U.S. at 818, 96 S.Ct. at 1246, citing *Donovan v. City of Dallas*, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964); *Princess Lida v. Thompson*, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939); *United States v. Bank of New York Co.*, 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331 (1936).

The Court was referring to the accepted principle that once a court has jurisdiction over a particular *res*, no other court can proceed *in rem* with respect to the same *res*. The principle is often stated as a matter of jurisdiction: that a second court cannot have jurisdiction to proceed *in rem* if jurisdiction over the *res* is maintained by

another court. Nevertheless, as the Court appeared to recognize, the principle involved is more accurately described as a prudential doctrine in which a second court with concurrent jurisdiction will exercise its discretion to defer to another court for the sake of comprehensive disposition of rights in a particular piece of property or in a fund.

■ Here, as in *Colorado River*, the suit is properly described as an *in personam* action for declaration of rights in property under the control of another suit. Thus, while it is not true that jurisdiction is lacking, the same principles which moved the Court to defer in *Colorado River* require us here to stay our hand. Even before *Colorado River* these principles had guided courts which admittedly possessed *in personam* jurisdiction to defer in cases involving disposition of assets of insolvent companies. See *Motlow v. Southern Holding & Securities Corp., supra; Superintendent of Insurance v. Bankers Life & Casualty Co.*, 401 F.Supp. 640 (S.D.N.Y.) *aff'd mem.* 526 F.2d 586 (2d Cir. 1975). Indeed, both of these cases involved challenges to actions taken by New York State Liquidators seeking to dispose of the assets of insolvent insurance companies. They too suggest the strong prudential reasons for requiring that all claims brought against a single fund or pool of assets of an insolvent company should be heard in a single forum. *Mathias v. Lennon, supra,* 474 F.Supp. at 952–54. The Supreme Court's affirmation of these principles in *Colorado River* leads us to believe that in the special circumstances of this case, sound judicial administration requires refraining from exercising concurrent jurisdiction.[3]

These special circumstances include not only the need for unified proceedings for disposing of the assets of a single fund, but the federal policy, noted above, expressed in the McCarran–Ferguson Act, of leaving the regulation of insurance companies to the individual states. While the Act would not prevent application of ERISA to an insurance company's own pension and welfare plans for its employees, since the Act was meant only to free state regulation "of the business of insurance," *SEC v. National Securities*, 393 U.S. 453, 459–60, 89 S.Ct. 564, 568–569, 21 L.Ed.2d 668 (1969), not regulation of insurers as employers, *see, e. g. NLRB v. Insurance Agents*, 361 U.S. 477, 80 S.Ct. 419, 4 L.Ed.2d 454 (1960) (NLRA applied to insurance company), it provides a further reason in matters touching upon insurance companies and their policyholders for the federal courts to be deferential to unified state proceedings. Finally, it is also significant that Congress in ERISA provided for concurrent federal and state jurisdiction over suits to enforce the terms of welfare benefit and pension plans, while imposing exclusive federal jurisdiction over other ERISA claims including those for breach of fiduciary duties. *See* 29 U.S.C. § 1132(e)(1). This suggests that, while Congress was aware of the novel and uniquely federal nature of most rights created by ERISA, it was also aware that the state courts would be fully capable of deciding claims for

3. The facts relied upon by the Court in *Colorado River* also counsel federal restraint here. In *Colorado River*, the United States brought suit as trustee for certain Indian tribes and as owner of various non–Indian claims to determine water rights in the Colorado River system. The Court found "the exceptional circumstances" warranting abstention to include 1) the McCarran Amendment, 43 U.S.C. § 666, which indicated a federal policy in favor of unified adjudication of water rights in a river system, 2) the existence of state procedures providing for such adjudication, 3) the absence of proceedings in the district court much beyond the mere filing of a complaint, 4) the large number of defendants in the state action thus indicating the extent of the determination of water rights,

5) the distance to the federal court, and 6) the contemporaneous participation of the United States in the state proceedings. Except for the geographical location problem in *Colorado River*, all of these factors are present here. The McCarran–Ferguson Act expresses a federal policy in favor of state regulation of insurance companies, and there is the further judicial policy favoring unified adjudication of rights in a single fund. State procedures exist. District court proceedings were minimal. Over 5,000 claims have been placed in litigation by various CMIC policyholders and the Department of Insurance is negotiating with another 20,000 claimants. Finally, Levy and his class have already presented their claims to the state court.

breaches of ERISA plans, claims which are closely analogous to ordinary contract actions.

Thus, we find that the "exceptional circumstances" required by *Colorado River* are present in this suit. To prevent duplicative litigation in state and federal forums, to enable the Superintendent to consolidate all claims against the insolvent insurance company, to avoid the delay and disruption which would result from piecemeal adjudication of such claims, and to promote the federal policy of leaving regulation of insurance matters to the states, the federal courts ought to abstain in cases raising ERISA claims such as the one here.

We recognize that abstention "is the exception, not the rule," *Colorado River, supra*, 424 U.S. at 813, 96 S.Ct. at 1244. However, we do not believe that our application of the holding of *Colorado River* to these facts will create too broad an avenue of abstention. Here, we rely upon long–settled principles favoring unified bankruptcy proceedings, where courts are fully competent to hear all of the alleged claims, principles specifically approved by the Supreme Court in *Colorado River*.

We further note that our decision does not suggest anything concerning the merits of Levy's "breach of plan" claim. We do not decide whether an ERISA plan existed or whether the terms of the plan have been violated, therefore allowing beneficiaries to recover benefits due and clarify rights to future benefits under 29 U.S.C. § 1132(a)(1)(B). Nor do we decide whether, as the district court found, insolvency relieves an employer from continuing retirement benefits paid year to year out of general operating revenues.[4]

### III.

■ Levy's second claim–that of a breach of fiduciary duties–is one which carries with it exclusive federal jurisdiction. 29 U.S.C. § 1132(e)(1). *Morrissey v. Curran*, 567 F.2d 546 (2d Cir. 1977). This factor makes abstention as to that claim inappropriate. In *Marshall v. Chase Manhattan Bank*, 558 F.2d 680 (2d Cir. 1977), this Circuit held that claims for breach of fiduciary duty under ERISA must be decided in federal court even though state proceedings to wind–up an ERISA fund had been begun by the fund's trustee in state court. Similarly, abstention has been denied in other cases where claims of a breach of fiduciary duties by an ERISA fiduciary were alleged although related state proceedings were underway. *See, e. g., Central States, Southeast and Southwest Areas Health and Welfare Fund*, 600 F.2d 671 (7th Cir. 1979); *Cartledge v. Miller*, 457 F.Supp. 1146 (S.D. N.Y.1978).

The logic supporting these decisions is equally applicable here. Where exclusive jurisdiction exists, only the federal courts can provide affirmative relief. *Movielab, Inc. v. Berkey Photo, Inc.*, 321 F.Supp. 806 (S.D.N.Y.1970), *aff'd*, 452 F.2d 662 (2d Cir. 1971). Thus federal courts must hear claims within their exclusive jurisdiction, for otherwise the right alleged would never be fully adjudicated. The ability to raise federal claims in state proceedings has always been a prerequisite to *Younger* abstention, and it is clear as well that abstention for purposes of judicial economy under *Colorado River* applies only where concurrent federal–state jurisdiction exists.

■ As to the merits of the claim, we find that Superintendent Lewis cannot be considered an ERISA fiduciary. This result is supported both by the language of the

---

4. Because we abstain on the issue of violation of the plan, we do not reach the troublesome question of whether relief, even if warranted, would be precluded by the Anti–Injunction Act, 28 U.S.C. § 2283, which prevents the federal courts from staying state court proceedings except as expressly authorized by Congress. Moreover, our disposition of the breach of fiduciary duty claim relieves us from deciding whether a claim carrying exclusive federal jurisdiction triggers the "expressly authorized" exception of the Act. *Compare Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 637 n.8, 97 S.Ct. 2881, 2890 n.8, 53 L.Ed.2d 1009 (1977) (plurality opinion) (exclusive jurisdiction irrelevant to effect of Act) *and General Motors Corp. v. Buha*, 623 F.2d 455, 458–59 (6th Cir. 1980) (Anti–Injunction Act does not prohibit ERISA fiduciary from obtaining injunction against state garnishment proceedings).

statute and the policy behind it. The statute defines a fiduciary as a person who exercises "any discretionary authority or discretionary control respecting management of [an ERISA] plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21). Even assuming that a valid ERISA plan existed in this case, Superintendent Lewis cannot be said to have exercised discretionary control over it when he was acting under a statutory duty to liquidate the assets of CMIC and cancel all of its outstanding contracts as mandated by the state court order of liquidation. *See* N.Y. Ins.Law, § 514 (McKinney 1966).

Levy argues that despite Lewis's statutory obligations, Lewis comes within the definition of a "fiduciary" because as Liquidator he exercises control over the assets of the plan. We disagree. Even if a plan existed, it was unfunded and hence no "assets" existed. The "plan" merely involved the yearly payment out of general operating revenues of premiums on an insurance contract. Levy's argument that the contract itself was an "asset" of the plan strains the natural meaning of the term "asset" as something having tangible value in itself.

Moreover, Lewis is not the type of official whom Congress had in mind as an ERISA fiduciary. It seems highly improper to impose strict fiduciary standards on a state Liquidator who operates under a complex scheme of state obligations designed to marshall efficiently and fairly the assets of an insolvent insurance company and apply them to valid outstanding claims. Such a person cannot be expected to pursue single-mindedly the interest of retirees, an isolated group of creditors. ERISA was designed to prevent a fiduciary "from being put in a position where he has dual loyalties, and, therefore, he cannot act exclusively for the benefit of a plan's participants and beneficiaries." Conf.Rep., H.R.Rep.No.93–1280, 93rd Cong., 2d Sess. (1974), at 309, U.S.Code Cong. & Admin.News 1971, p. 4639; reprinted in III *Legislative History of the Employee Retirement Income Security Act of 1974*, at 4576 (1976). Lewis's statutory

obligation is to consider fairly the claims of all creditors of the bankrupt company; as a fiduciary, he could not help being put in a position of divided loyalty from the outset.

It may well be, as appellants point out, that ERISA favors the existence of a fiduciary for every plan, yet here if any plan existed there was no fiduciary during the life of the plan except possibly the management of the company. Since management has been replaced by a statutory liquidator, no possible fiduciary now exists. If this was in fact a qualified ERISA plan, a fiduciary should have been appointed at an earlier date, and the courts cannot supply one now, particularly when the only candidate is incapable of giving undivided loyalty to plan beneficiaries. We note that the Liquidator's treatment of plan beneficiaries can be challenged through other objections raised via the normal procedures for contesting the Liquidator's actions in state court.

Thus we find that the Superintendent did not breach any fiduciary duties in his efforts to carry out his statutory obligation to liquidate CMIC. Whether his termination of benefits violated the terms of an ERISA plan or violated the retirees' contractual rights under state law are questions we leave to be determined in the ongoing state proceedings. We therefore affirm dismissal of the complaint.

MANSFIELD, Circuit Judge (concurring):

I concur in the result reached by Judge Lumbard in his carefully considered opinion. However, I do so solely on the ground that, while federal courts have concurrent jurisdiction over appellant's only actionable claim, i. e., his allegation that he and members of his class are being denied benefits in breach of CMIC's employee welfare benefit plan and that this violates his rights under ERISA, 29 U.S.C. §§ 1132(a)(1)(B), 1102(1), 1103(b), 1132(e)(1), we are faced with exceptional circumstances warranting abstention under the doctrine of *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800,

96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Since the state court is already engaged in the comprehensive adjudication of rights in a single fund "the contemporaneous exercise of concurrent jurisdictions," *id.* at 817, 96 S.Ct. at 1246, would only lead to duplication and a waste of judicial resources. Abstention is warranted only on the understanding that the state court is obligated to apply federal, not state, law in determining whether appellant has a valid claim for breach of his rights under ERISA, *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957). I am confident that federal law will be applied by the state courts.

Although appellant has stated a claim for breach of an ERISA welfare benefits plan he has failed to state a valid ERISA claim under 29 U.S.C. § 1132(a)(1)(A) against Superintendent Lewis as a fiduciary, see 29 U.S.C. § 1002(21)(A), over which federal courts would have exclusive jurisdiction. It is true that an ERISA "employee welfare benefit plan" may consist of unfunded insurance policies. Section 1002(1) provides:

"The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, *through the purchase of insurance or otherwise*, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services. . . ." (Emphasis added).

It is not unusual for such an unfunded plan, as is alleged here, to consist of various booklets and documents issued by the employer to its employees. *Gordon v. ILWU--PMA Benefit Funds*, 616 F.2d 433 (9th Cir. 1980); *Gould v. Continental Coffee Co.*, 304 F.Supp. 1 (S.D.N.Y.1969); *Hunacek v. Union Welfare Fund*, 100 Misc.2d 740, 420 N.Y. S.2d 156 (1979). However, § 1103(b) states

that the requirement of § 1103(a) that all assets of an employee benefit plan shall be held in trust "shall not apply . . . (1) to any assets of a plan which consist of insurance contracts or policies issued by an insurance company qualified to do business in a state." Thus, although appellant alleges an ERISA plan and a breach of his rights thereunder, which states a claim over which we have concurrent jurisdiction, his effort to state a claim against Superintendent Lewis as a fiduciary must fail for lack of any plan assets over which Lewis has discretionary authority as a trustee, 29 U.S.C. § 1002(21). The unfunded plan here, which consists solely of the employer's handbook and brochure, has no assets of which Lewis could have custody, much less discretion, or any fund or res with respect to which he could act as a fiduciary under ERISA. Therefore the exclusive federal jurisdiction provision, 29 U.S.C. § 1132(e)(1), does not apply.

Superintendent Lewis, however, remains under an obligation to treat appellant's ERISA contract claim, if it is established, just as he would that of any other creditor's claim. To the extent that appellant proved a claim to future insurance benefits under the plan, the claim presumably would be allowed in an amount based upon the cost of substitute health and welfare insurance policies for the balance of the retirees' life expectancies.

With respect to the claim for breach of an ERISA plan over which we have concurrent jurisdiction, I disagree with the notion that *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), or *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), authorizes abstention here. *Burford* is limited to cases where exercise of federal jurisdiction might result in disruption of complex or fragile state administrative or regulatory systems, i. e., state policy problems of substantial public interest whose importance transcends the result in the immediate federal action, 319 U.S. at 327, 334, 63 S.Ct. at 1104, 1107. No such situation is presented here. This is not a challenge to the administration of any

state laws regulating the insurance business. The precise issue is one of federal law, the duties owed to retirees under an ERISA welfare plan to be financed by insurance. This is not an issue within the liquidator's special competence. It would not damage the state regulatory system or even involve any issues of fact or law with respect to that system. Except for its dependence on interpretation of a federal statute, appellant's claim is no different from that of any other creditor in the CMIC liquidation proceedings. Even in cases where *Burford* does apply we have been cautioned to apply it sparingly. *Colorado River Cons. Dist. v. United States, supra,* 424 U.S. at 815–16, 96 S.Ct. at 1245–1246. Here it does not apply at all. See in accord, *Marshall v. Chase Manhattan Bank, N.A.,* 558 F.2d 680 (2d Cir. 1977). "[I]t was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it." *Colorado River, supra,* 424 U.S. at 814–15, 96 S.Ct. at 1244–1245. The effect of applying *Burford* here might be to forego exercise of our concurrent federal jurisdiction with respect to any claim involving a regulated state insurance company, which would be unthinkable.

Nor do I agree with the majority that the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), warrants abstention here. We firmly rejected an identical proposal in an opinion by Judge Mulligan in the closely analogous case of *Marshall v. Chase Manhattan Bank, supra,* 558 F.2d at 683–84, which likewise involved the administration of an ERISA plan. Noting that *Younger* related to a pending state court criminal action, Judge Mulligan stated:

"*Younger* abstention has been recently broadened by considerations of comity and federalism to include federal abstention even where the pending state action is civil in nature but where the state has a clear interest. Thus, in *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), the state had brought an action to enforce a nuisance statute. Since the state was a party to

the proceeding and the nuisance statute was akin to a criminal enactment, federal abstention was decreed. In *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), *Huffman* was extended to require federal abstention where the federal plaintiffs had previously been incarcerated by the state in contempt proceedings. The interest of the state in vindicating its civil enforcement proceedings required federal abstention on comity grounds. Similarly in *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), where a state agency had brought a civil action against the federal plaintiffs in a state court to recover welfare payments allegedly fraudulently obtained, the Supreme Court held that the federal court should abstain under *Huffman* principles. [Footnote omitted]

"This case does not fall within the ambit of *Huffman, Juidice* and *Trainor.* Neither the Secretary nor the State of New York has ever been a party to the state action. There are no federal constitutional issues which the state court has been asked to determine so that no issue of comity or federalism is present. The pending state action is between private parties with the state complaint simply invoking the general equitable jurisdiction of the state court to settle an account, terminate the trust and authorize a distribution. No state law involving employee benefit plans was invoked in the state proceeding. More importantly, the Secretary has initiated a federal action seeking the construction of a federal statute which, as we have noted, provides that state laws are superseded and that the federal courts have exclusive jurisdiction. Under these circumstances federal abstention was improper."

These principles have not in my view been changed by *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), where the Court stated:

"As was the case in *Huffman,* the State here was a party to the state proceedings, and the temporary removal of a child in a

child–abuse context is, like the public nuisance statute involved in *Huffman,* 'in aid of and closely related to criminal statutes.' *Id.,* 420 U.S. at 604, 95 S.Ct. at 1208."

Lastly, nothing in *Younger* or its progeny supports the view that we should abstain from adjudicating appellant's damage claims, which do not depend on the outcome of the state court liquidation proceeding.

In my view the majority also errs in suggesting that abstention in the present case is somehow supported by the McCarran–Ferguson Act, 15 U.S.C. §§ 1101–1015, which guarantees that the states may regulate "the business of insurance," unimpeded by federal law. That Act does not in any way preclude adjudication by federal courts of claims merely because insurance companies are involved. We are here asked not to resolve any issues bearing on "the business of insurance," such as the content or meaning of insurance policies, *Wadsworth v. Whaland,* 562 F.2d 70 (1st Cir. 1977), or the methods used by insurers to sell such policies, *Dexter v. Equitable Life Assurance Society of United States,* 527 F.2d 233 (2d Cir. 1975), but to answer the simple question of whether appellant has a valid claim for violation of an ERISA welfare benefit plan entitling him and other retirees to be recognized as creditors in the pending liquidation proceeding. See *SEC v. National Securities, Inc.,* 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969) (holding that McCarran–Ferguson Act does not apply to Arizona laws regulating relationship between insurance companies and their shareholders). Exercise of federal jurisdiction here does not interfere with state autonomy in its regulation of the insurance business. Indeed, to the extent that appellant's federal law claim is established, entitling it to be recognized along with claims of other creditors in the liquidation proceeding, CMIC policyholders will not be adversely affected, since their claims are guaranteed by the New York Security Fund.

Although *Burford, Younger* and the McCarran–Ferguson Act do not support abstention in the present case, I am persuaded that we may decline to hear the case under the doctrine of *Colorado River Water Cons. Dist. v. United States, supra,* which held that, although the pendency of a state court action is no bar to an action in the federal court with respect to subject matter over which both have concurrent jurisdiction, a federal court may decide not to entertain a claim in exceptional cases where appraisal of factors bearing upon exercise of federal jurisdiction clearly justify a declination. Here there are compelling reasons against exercising our concurrent jurisdiction. The state court proceeding has already progressed quite far. A determination by us as to the validity of appellant's claim would not only be duplicative but might also delay and complicate the pending state court proceeding. We have no reason to believe that the state court will not correctly interpret and apply federal law in determining whether appellant has a valid ERISA claim for damages based on breach of the alleged CMIC welfare benefits plan and, if so, allow the claim in an amount sufficient to permit appellant and other CMIC retirees similarly situated to participate equitably in the distribution of its assets.