Michael O'REILLY, Sue–Ellen Burke, John Donnelly, Mary Ellen Stallings, and Jose Paredes, Plaintiffs–Appellants,

v.

Barbara CEULEERS, Rene DeVillegas, Bill Gunter, Art Collins, Bob Johnson, Physicians Corporation of America, Peter E. Kilissanly, and Alif Hourani, Defendants–Appellees.

No. 89–5772.

United States Court of Appeals, Eleventh Circuit.

Sept. 26, 1990.

Richard I. Manas, Miami, Fla., for plaintiffs-appellants.

Brian K. Goodkind, Gregory St. John, Adorno & Zeder, Miami, Fla., for defendants-appellees.

Before JOHNSON and CLARK, Circuit Judges, and BROWN *, Senior District Judge.

WESLEY E. BROWN, Senior District Judge.

This is an appeal from an order of the district court dismissing plaintiffs' complaint which sought severance pay benefits after the termination of their employment at the International Medical Centers (IMC) in May of 1987. In the action filed under the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq., plaintiffs claimed

* Honorable Wesley E. Brown, Senior U.S. District Judge for the District of Kansas, sitting by designation.

that the defendants had breached their fiduciary duties under ERISA by discriminating against them in denying severance benefits while awarding those same benefits to others.

At the time suit was filed, the employer, IMC, had been placed in receivership by the Insurance Commissioner of the State of Florida. In sustaining defendants' motion to dismiss, the trial court found that while ERISA generally preempted all state laws affecting ERISA benefits, the insurance "savings clause," 29 U.S.C. § 1144(b)(2)(A) applied, and "ERISA jurisdiction no longer governs."

■ The district court's dismissal, based upon an interpretation of the ERISA preemption, is a matter of law which is subject to plenary review by this court. See *Brown v. Blue Cross & Blue Shield of Alabama*, 898 F.2d 1556 (11th Cir.1990). Following our review of the record and the law, we reverse the order of the district court dismissing plaintiffs' action.

Under the allegations of the complaint, which we accept as true for the purpose of our review, it appears that plaintiffs' employer, IMC, was an employer within the meaning of ERISA and a sponsor of a severance pay plan which was a covered employee benefit plan subject to ERISA. Under this plan, severance pay was provided for employees holding the title of director or higher, and plaintiffs were beneficiaries entitled to severance pay under the plan since their termination was not for cause.

Under the severance pay plan, Exhibit B to the complaint, covered employees were to be paid through the pay period in which they were working and an individual could be paid "through the balance of their contract, or for a period not to exceed three (3) months" upon a determination made by the "Executive Vice President/Chief Operating Officer under recommendation of the appropriate Senior or Executive Vice President responsible."

Plaintiffs allege, and we must assume, that all defendants are fiduciaries in that they exercised discretionary control over the management and administration of the plan and the payment of benefits under the plan. The plan was not an "insured plan" since IMC had an established fund or line item budget allocation for the payment of severance pay benefits under the plan.[1]

The state of Florida regulates the operations of "Health Maintenance Organizations" under its Insurance Code. Fla.Stat. Anno. Chapter 641, Part II, § 641.17, et seq. Under state law, a "Health Maintenance Organization" is any organization which provides, directly or indirectly, health care services to persons on a prepaid, fixed-sum basis; which provides health care services which subscribers might reasonably require to maintain good health; or which provides physician services directly through physicians who are either employees or partners of such organization or by arrangements with any physician or physicians. Fla.Stat.Anno. § 641.19(6)(a), (b), (c). Annual reports must be filed by such organizations with the Department of Insurance of the State of Florida, and that department has authority to examine the books and records of the organization and ascertain "the quality of health care services being provided by the organization." Fla.Stat.Anno. § 641.27. The state law further provides that:

> Any rehabilitation, liquidation, conservation, or dissolution of a health maintenance organization shall be conducted under the supervision of the department (Insurance Department), which shall have all power with respect thereto granted to it under the laws governing the rehabilitation, liquidation, conservation, or dissolution of life insurance companies. *Id.* at § 641.27.

On May 14, 1987, in the circuit court of the Second Judicial Circuit, Leon County, Florida, an order was entered appointing the Department of Insurance as receiver for IMC for the purposes of rehabilitation

---

1. The IMC "Budget for Week Ending 5/15/87" provided a budget item of $265,000.00 for sever-

ance payments. (Exhibit A to complaint)

under Fla.Stat.Anno. § 641.27. *In Re The Receivership of International Medical Centers, Inc., a Florida Corporation,* Civil Action No. 87–1456. (Exh. A, Motion to Dismiss, Record on Appeal, Item 13)

The order was based upon a finding that IMC was "statutorily insolvent under Section 631.011(9) and Chapter 641 of the Florida Statutes."

The defendant Bill Gunter is the Insurance Commissioner of the State of Florida. As such, he "intervened in the operations of IMC at times material hereto and he exercised discretionary authority and control respecting management and administration of the severance plan and the disposition of funds under the said plan through his agents and employees in such a manner that he was a fiduciary within the meaning of ERISA." (Complaint, ¶ 14) The defendant Physicians Corporation of America is a Kansas corporation engaged by Bill Gunter and/or IMC to oversee operations of IMC and as such it "proposed, approved, or participated in fiscal decisions relating to funds of severance plan benefits." (Complaint, ¶ 17) The other defendants, some residents of the state of Florida; and defendant Kilissanly, a resident of the state of Kansas; and defendant Hourani, a resident of Texas or Kansas; also exercised discretionary authority and control concerning administration of the severance plan and the payment of funds from that plan. (Complaint, ¶¶ 11–19)

In Count I of the complaint, plaintiffs contend that defendants breached their fiduciary obligations by failing or refusing to pay severance benefits to plaintiff, that they breached their fiduciary obligations by using allocated severance pay funds for other purposes, and by discriminating against plaintiffs in favor of other persons, all such acts being arbitrary and capricious and in violation of duties owed to plaintiffs

under ERISA Section 404 (29 U.S.C.A. § 1104).

In Count II of their complaint, plaintiffs further charge that "to the extent any of the defendants did not actually make the decisions to deny plaintiffs their benefits, such defendants empowered and made it possible for co-fiduciaries to deny to plaintiffs their benefits under ERISA," and that the defendants, Ceuleers and De Villegas, "are liable for the acts of the other defendants as co-fiduciaries to the extent that they failed to advise such co-fiduciaries of the requirements of the severance pay plan."

Upon these allegations plaintiffs seek judgment for "compensatory damages, pre- and post-judgment interest, costs, attorneys' (fees), and such other relief as this Court deems fit and proper."

As noted, we must assume that all defendants were acting as fiduciaries with reference to the severance pay plan under the direct or indirect supervision of the Florida State Insurance Commissioner, defendant Gunter.[2]

Plaintiffs claim that defendants have breached fiduciary duties owed to plaintiffs under the provisions of ERISA Section 404, codified as 29 U.S.C.A. § 1104, which provides in pertinent part the following standards:

§ 1104. Fiduciary duties

(a) Prudent man standard of care

(1) (With certain exceptions) ... a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

**2.** Under ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan...." 29 U.S.C.A. § 1002(21)(A). See *Mutual Life Ins. Co. of New York v. Yampol,* 840 F.2d 421 (7th Cir.1988) and *Cf. Levy v. Lewis,* 635 F.2d 960 (2d Cir.1980).

(B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

Section 1132 of 29 U.S.C.A. provides for civil enforcement of ERISA rights:

(a) *Persons empowered to bring a civil action*

A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section (administrator's refusal to supply requested information), or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

\*      \*      \*      \*      \*      \*

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

\*      \*      \*      \*      \*      \*

Section 1132(e) of 29 U.S.C.A. provides that except for actions to recover benefits under § 1132(a)(1)(B), which might be termed "breach of contract" actions, the federal courts have *exclusive* jurisdiction of actions to enforce ERISA rights:

(e) Jurisdiction

(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

Under federal law, the plaintiffs have the right to benefits under their employer's plan. The factual allegations in their complaint establish a *prima facie* right to relief in this action.

ERISA regulates *all* plans designed to benefit employees unless specifically exempted from statutory coverage. The scope of ERISA is found in the definition provided by 29 U.S.C.A. § 1002(1):

(1) The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, *through the purchase of insurance or otherwise*, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services.... (Emphasis supplied)

The broad preemptive sweep of ERISA is set out in 29 U.S.C.A. § 1144:

§ 1144.   *Other laws*

(a) *Supersedure; effective date*

Except as provided in subsection (b) of this section, the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title ...

The exception to preemption and the exception to the exception are found in paragraph (b) of § 1144, 29 U.S.C.A.:

(b) *Construction and application*

\*      \*      \*      \*      \*      \*

(2)(A) Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

(B) Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

In *Howard v. Parisian, Inc.,* 807 F.2d 1560 (11th Cir.1987), a panel of this court had occasion to discuss the broad preemptive sweep of ERISA:

With exceptions that are irrelevant here, ERISA "supersede(s) any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C.A. § 1144(a). Because Congress intended the regulation of employee benefit plans to be exclusively a federal concern ... the Supreme Court has broadly interpreted the "relate to" language of Section 1144(a) as encompassing any state law that has a "connection with or reference to" employee benefit plans.... Thus ERISA preempts all state laws insofar as they apply to employee benefit plans even if those laws do not expressly concern employee benefit plans and amount only to indirect regulation of such plans ... Furthermore, ERISA preempts all such laws regardless of whether they conflict with any specific provision of ERISA. Otherwise, the regulation of employee benefit plans would not be exclusively a federal concern.... 807 F.2d at 1563 (citations and footnote omitted).

And see *Mullenix v. Aetna Life and Casualty Insurance Co.,* 912 F.2d 1406 (11th Cir.1990).

In sustaining the motion to dismiss, the trial court recognized that defendants "concede that prior to the declaration of the insolvency of IMC and the appointment of the Commissioner as receiver of IMC, the alleged severance pay plan would have been an ordinary employer sponsored employee welfare benefit plan. The alleged severance pay plan then *would not have been* within the scope of the ERISA savings clause by virtue of the plan being established and maintained by an insurance company." (Emphasis supplied) [3] The trial court further found, however, that the savings clause, 29 U.S.C.A. § 1144(b)(2)(A), applied because Chapter 631 of the Florida Statutes was a law regulating insurance since it "governs the liquidation and rehabilitation of insurers." In addition, the district court believed that Chapter 631 met the three criteria established by the Supreme Court to determine if a state law pertained to the "regulation of insurance" within the meaning of the McCarran–Ferguson Act, 15 U.S.C. § 1011, et seq. See *Anschultz v. Connecticut General Life Ins. Co.,* 850 F.2d 1467 (11th Cir.1988).

In so finding, the trial court [4] here stated:

... Chapter 631 has the effect of transferring or spreading a policyholder's risk because Chapter 631 provides assurance to a policyholder that at least some of the risk may be shifted to an illiquid insurer or its appointed receivership.... At a bare minimum, Chapter 631 has the effect of transferring some risk from the policyholder to the illiquid insurer and spreading risk among all those policyholders and other creditors who are entitled to a statutorily specified priority upon an insurer entering receivership under Chapter 631.

\*   \*   \*   \*   \*   \*

**3.** With reference to this concession by defendants, it should be noted that even *prior to* the declaration of insolvency, IMC as an HMO under Florida law was subject to regulation by the insurance commissioner.

**4.** Chapter 631, referred to by the trial court is entitled "Insurer Insolvency; Rehabilitation and

Liquidation." As noted, the order appointing the Department of Insurance as receiver for IMC was entered pursuant to *Chapter 641* relating to "Health Care Service Programs," § 641.27, which gives the Insurance Department power to act according to laws governing life insurance companies.

Chapter 631 is designed to protect the interests of the insureds in their relationship with insurers, and therefore, constitutes an integral part of the policy relationship between the insurer and the insured ...

The trial court believed that its sole task was to determine if Chapter 631 was a "law of any state which regulates insurance," and that the fact that IMC was an HMO and not an insurance company was no consequence to that decision.

In *Arizona v. Maricopa County Medical Society*, 457 U.S. 332, 102 S.Ct. 2466, 73 L.Ed.2d 48 (1982), the Supreme Court had occasion to note the difference between health insurance plans and health maintenance organizations:

> Most health insurance plans are of the fee-for-service type. Under the typical insurance plan, the insurer agrees with the insured to reimburse the insured for "usual, customary, and reasonable" medical charges. The third-party insurer, and the insured to the extent of any excess charges, bears the economic risk that the insured will require medical treatment. An alternative to the fee-for-service type of insurance plan is illustrated by the health maintenance organizations authorized under the Health Maintenance Organization Act of 1973, 42 U.S.C. § 300e et seq. (42 U.S.C.S. § 300e et seq.). Under this form of prepaid health plan, the consumer pays a fixed periodic fee to a functionally integrated group of doctors in exchange for the group's agreement to provide any medical treatment that the subscriber might need. The economic risk is thus borne by the doctors. (457 U.S. at 339 n. 7, 102 S.Ct. at 2470 n. 7, 73 L.Ed.2d at 55 n. 7.)[5]

■ We must find that the district court erred in disregarding the nature of IMC's business. It is not an insurance company.

As defined by Florida law, it is a health maintenance organization which provides health care services to persons on a prepaid basis, and the fact that it may be subject to the same laws as state insurance companies does not mean that it is in the "business of insurance" for the purpose of the ERISA savings clause. When Chapters 631 and 641 are applied to IMC, the insurance commissioner is not "regulating the business of insurance." Insofar as the record in this case is concerned, there are no "insurance policies," "policyholders," or "insureds."

This seems readily apparent when the record reflects that the Florida Insurance Commissioner has found it necessary to retain out-of-state medical professionals for the purpose of conducting the business and affairs of IMC.[6]

■ Even assuming that IMC was an "insurance company," ERISA would still control its employee benefit plans. In *Howard v. Parisian, Inc., supra*, the court noted that when an insurance company merely acts as an administrator, its activities are not within the insurance exception savings clause:

> We observe here that the insurance exception to § 1144(a) is inapplicable even though Protective is an insurance company ... (The insurance exception) applies only to state laws that regulate the business of insurance and not to state laws that merely affect insurance companies in some way. An insurance company acting as an administrator for a self-funded plan is not acting as an insurance agent ... Therefore, this exception is inapplicable. 807 F.2d at 1565 n. 2.

In *Insurance Bd. of Bethlehem Steel Corp. v. Muir*, 819 F.2d 408 (3rd Cir.1987), the court had occasion to discuss the insurance exception, explaining why a company such as Blue Cross could not avoid liability

---

5. In *Arizona v. Maricopa County Medical Society* the court found that an agreement among physicians setting fees for payment for health coverage violated § 1 of the Sherman Act.

6. The defendant Physicians Corporation of America, a Kansas Corporation, was retained by Bill Gunter and/or IMC to "oversee operations of IMC and proposed, approved, or participated in fiscal decisions relating to funds of severance plan benefits ..." The defendant Peter Kilissanly, a resident of the state of Kansas, and defendant Alif Hourani, a resident of Texas or Kansas, are also named as fiduciary defendants in this action. (Complaint ¶¶ 17, 18, 19)

under ERISA. There the benefit plan which provided Bethlehem Steel employees with various medical programs was administered by a board which contracted with Blue Cross and Blue Shield to process claims and pay benefits. The board advanced money to pay anticipated claims and reimbursed the companies for any claims paid beyond the monthly advances. Blue Cross and Blue Shield was paid a fee for its administrative services. The Department of Insurance for the state of Pennsylvania determined that provision for certain benefits did not comply with Pennsylvania law with respect to newborn coverage, psychological testing services, and maternity benefits. The board filed suit for a declaratory judgment that ERISA preempted Pennsylvania insurance law. The court held that since Blue Cross/Blue Shield was not engaged in the "business of insurance," ERISA's insurance savings clause did not save the Pennsylvania mandated benefit laws from preemption.

In *Powell v. Chesapeake & Potomac Telephone Co. of Va.*, 780 F.2d 419 (4th Cir.1985) *cert. den.* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986), a beneficiary of a self-funded employee benefit plan sued her former employer and the plan administrator for breach of fiduciary duties in handling her disability claim. The plan administrator was the Connecticut General Life Insurance Company. The beneficiary claimed that state law claims based upon an alleged breach of an implied covenant of good faith and a violation of the state Unfair Trade Practices Act were saved from preemption by the insurance savings clause. In finding that there was no insurance exception to preemption, the court applied this reasoning:

> We read the insurance saving clause, however, to exempt from ERISA's preemptive effect only those state insurance laws that regulate the "business of insurance" ... The (McCarran–Ferguson) Act did not, however, "purport to make the State supreme in regulating all the activities of insurance *companies* ... only when they are engaged in the "business of insurance" does the statute ap-

ply. (Emphasis of the court; citations and footnote omitted) 780 F.2d at 423.

\* \* \* \* \* \*

In its role as Plan administrator, Connecticut General neither spreads nor underwrites insurance risks; there is no insurance policy or contract. Rather, Connecticut General provides certain purely administrative claims processing functions pursuant to an administrative services agreement with the Plan's sponsor, C & P. Thus, notwithstanding that Virginia's implied covenant of fair dealing and Unfair Trade Practices Act may in some circumstances reach even the purely administrative activities of insurers, such regulation would not bear upon the "business of insurance" within the contemplation of ERISA's insurance saving clause and thus is not saved from preemption by ERISA. (Footnotes omitted) 780 F.2d at 423–424.

In *Levy v. Lewis*, 635 F.2d 960 (2d Cir. 1980), relied on by the trial court here, a class action was filed under ERISA by former employees of the Consolidated Mutual Insurance Company, which was in liquidation under the New York Superintendent of Insurance, pursuant to various court orders. The superintendent had terminated the retirement benefits of former employees and had sought approval of his action in state court. The employer in this case, an insurance company, had provided life insurance and medical and health insurance to its employees *through insurance policies* held by the company on which premiums were paid out of general operating revenues.

The district court in *Levy* held that even if the benefits were being paid according to a qualified employee welfare benefit plan, and even if the state superintendent was a "fiduciary" of that plan, both propositions doubtful to the court, there was nothing in ERISA which required that welfare benefits, funded year to year out of operating revenues, be continued in the event of liquidation or insolvency.

On appeal, the Second Circuit agreed that the case must be dismissed but so ruled upon the ground that the district

court should have abstained on the question of violation of the plan, and that as to the claim based upon an alleged breach of fiduciary duties, the state superintendent was not an ERISA "fiduciary."

█ The *Levy* case is clearly distinguishable from the factual situation presented by the allegations of plaintiffs' complaint in this action. In the first instance, in *Levy*, there was an insurance company and there were insurance policies. Second, there was a state court order there which had approved discontinuance of *all* retirement benefits while in this case plaintiffs contend that the insurance commissioner engaged in discriminatory and selective refusal to pay severance benefits to certain employees. The *Levy* decision on abstention was decided prior to *Moses H. Cone Hospital v. Mercury Constr.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), which emphasized that abstention is an exception to be used sparingly; and in the appeal before us, defendant-appellees have conceded that abstention would be improper.[7]

In *Levy*, the district court found that the state insurance commissioner was not a "fiduciary" under ERISA because "(e)ven if a plan existed, it was unfunded and hence no 'assets' existed." As noted, the plan there merely involved yearly payments of premiums on an insurance policy which supported the plan.

In the case now before us, plaintiffs have alleged, and we accept as true, the claim that defendants are fiduciaries under the benefit plan.[8] In *Mutual Life Ins. Co. of New York v. Yampol*, 840 F.2d 421 (7th Cir.1988), the court found that the Illinois Director of Insurance, acting under a state court order to liquidate a self-insured employee benefit plan, had standing to sue as a "fiduciary" under ERISA. In so doing,

the court distinguished the *Levy* case in this manner:

The Director does not, of course, have complete discretion over the management and disposition of the assets of the Trust, but the fact that a court oversees and must approve many of the Director's decisions does not bely the fact that the Director negotiates, solicits, drafts contracts and acts in general as the manager of the Trust. An individual is a fiduciary to the extent that he exercises *any* discretionary authority or control respecting management of a plan or the disposition of its assets. (Emphasis of the court) 840 F.2d at 425.

\*   \*   \*   \*   \*   \*

The defendants argue that *Levy v. Lewis* ... establishes that the Director may not be considered a fiduciary for the purposes of ERISA. In *Levy*, the Second Circuit held that the New York state liquidator was not an ERISA fiduciary in the circumstances of that case where there were no plan assets to manage or dispose, and where the liquidation of the insurance company involved would require the state liquidator to favor the ERISA creditors, an "isolated group of retirees," rather than to consider fairly the claims of all the creditors ... With regard to the second rationale, the liquidated company under the New York state liquidator's control was an insurance company that sponsored a variety of programs that established obligations on its part ... There is no insurance company with several plans involved in the appeal before us; instead, there is a single ERISA plan, the Trust. Thus the conflicts *Levy* envisioned among various

---

**7.** It should be noted that a claim for a breach of fiduciary duties is one which is *exclusively* within federal jurisdiction while there is concurrent jurisdiction on claims made for breach of a plan's provisions. 29 U.S.C.A. § 1132(e). Abstentions on claims for a breach of fiduciary duties under ERISA would be inappropriate. *Levy v. Lewis, supra,* 635 F.2d at 967. Defendants have conceded the abstention question:
  "7. *Abstention Not a Proper Remedy in This Case.*

    Plaintiffs argue that abstention is improper. The Defendants agree, and have so advised the Plaintiffs and the District Court during oral argument on the motion to dismiss. Accordingly, this is no longer an issue." (Brief for Appellees, p. 24)"

**8.** The district court made no finding that defendants were not fiduciaries.

beneficiaries and participants of different plans fall out of the picture.

Of course, the Trust itself may have other creditors besides the participants and beneficiaries, and the Director must consider their claims fairly—but this does not put him into a substantively different position from other fiduciaries of ERISA plans. The management of any ERISA plan necessarily involves the making of commitments (beyond the circle of participants and beneficiaries) in the course of investing the ERISA funds and accomplishing the day-to-day administration of the plan. While the fiduciary's loyalty must be to the participant and beneficiaries, he must also treat fairly the plan's obligations to the creditors created by its ongoing business.... 840 F.2d at 425–426 (Citations and footnotes omitted).

After reviewing the record and law, we conclude that it was error for the district court to dismiss this case simply because the Insurance Commissioner of the State of Florida was engaged in rehabilitating or liquidating IMC. Whatever his activities may have been in conducting the affairs of IMC, he was not engaged in regulating "the business of insurance" as that term has been defined. Thus, the insurance savings clause does not apply. The fact that a state officer is engaged in supervising the business of IMC does not destroy or defeat the jurisdiction of the district court to determine the rights of plaintiff beneficiaries in an ERISA benefit plan set up by their employer.

ACCORDINGLY, the order dismissing plaintiffs' action is REVERSED and this action is REMANDED to the district court for further proceedings under ERISA.