**AURELIUS CAPITAL MASTER, INC., et al., Plaintiffs,**

v.

**MBIA INSURANCE CORPORATION, et al., Defendants.**

**No. 09 Civ. 2242 (RJS).**

United States District Court, S.D. New York.

Feb. 11, 2010.

70

Barry R. Ostrager, David W. Ichel, and Patrick T. Shilling of Simpson, Thacher & Bartlett, New York, NY, for Plaintiffs.

Jonathan D. Siegfried, John M. Nonna, and Lawrence A. Larose of Dewey & Le-Bouef, LLP, New York, NY, for Defendants.

MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge:

In this putative class action, Plaintiffs challenge the 2009 reorganization of MBIA Insurance Corporation as a fraudulent conveyance (Count I), constructive fraudulent conveyance (Count II), and a breach of the implied covenant of good faith and fair dealing (Count III). Now before the Court is Defendants' motion to dismiss the case pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), as well as Defendants' request that the Court abstain from exercising jurisdiction or otherwise

stay the case during the pendency of related proceedings in state court. For the reasons discussed below, the Court declines to abstain and denies the motion to dismiss.

## I. Background

### A. Facts [1]

#### 1. The Challenged Transaction

Defendants are a group of related companies forming a monoline insurance conglomerate.[2] MBIA Inc. is the publicly traded parent corporation. (Compl. ¶ 18.) Prior to the transaction challenged in this case, its subsidiary, MBIA Insurance, was the world's largest provider of monoline insurance. (*Id.* ¶ 19.) Its guarantees included both public finance bonds and structured finance products. (*Id.*) Also prior to the transaction at issue in this case, MBIA Illinois was a wholly owned subsidiary of MBIA Insurance. (*Id.* ¶ 20.)

The essential business of MBIA is to provide "credit enhancement insurance." (*Id.* ¶ 10.) The insurance "guarantee[s] payments of principal and interest in securities and other financial instruments against issuer defaults." (*Id.*) Therefore, any issuer selling securities backed by MBIA Insurance will possess the credit rating of MBIA Insurance, rather than the rating of the issuer. (*Id.* ¶ 24.)

Prior to February 18, 2009, MBIA Insurance insured both municipal bonds and structured finance products. (*Id.* ¶ 37.) On February 18, 2009, MBIA announced a significant restructuring. (*Id.* ¶ 38.) Through the restructuring, MBIA Insurance transferred over $5.4 billion of assets,

and its municipal bond business, to MBIA Illinois. The restructuring was accomplished as follows:

(1) MBIA Insurance transferred all the stock of MBIA Illinois to MBIA Inc., which then transferred the stock to a new subsidiary holding company. (*Id.* ¶ 39.)

(2) MBIA Insurance distributed to MBIA Inc. some $2,085 billion of cash and investment securities. (*Id.* ¶ 40.) Of this $2.085 billion, $938 million was described as a stock redemption, and the remaining $1,147 billion was accomplished by dividend. (*Id.*) The entire $2.085 billion was then given to MBIA Illinois. (*Id.*)

(3) MBIA Insurance and MBIA Illinois entered into a 100% Quota Reinsurance Agreement, which allowed municipal bond policyholders to make claims for payment directly against MBIA Illinois. (*Id.* ¶ 41.) In connection with this agreement, MBIA Insurance transferred to MBIA Illinois some $2.89 billion in net unearned premiums. (*Id.*) Despite the agreement, in the event that MBIA Illinois were to default, MBIA Insurance would remain obligated to cover the policies. (*Id.* ¶ 42).

The net result of the restructuring, Plaintiffs allege, "was to split an already distressed MBIA Insurance company into two entities—a healthy and well-capitalized United States municipal bond insurance company [MBIA Illinois], which hopes to write new such policies, and a

---

**1.** When resolving a motion to dismiss pursuant to Rule 12(b)(6), courts are permitted to consider documents that are attached to the complaint, materials that are incorporated into the pleading by reference, and matters of which judicial notice may be taken. *See*

*Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

**2.** A monoline insurer provides only financial guarantee insurance, and not property, casualty, life, health, or disability insurance. (Compl. ¶ 19.)

moribund and insolvent MBIA Insurance company left largely with guaranty exposures to toxic securities and instruments and no prospect of writing new business." (*Id.* ¶ 5.)

MBIA Insurance's credit rating was AAA, or the highest possible rating, when virtually all of the policies were issued. (*Id.* ¶ 32.) After the restructuring at issue in this case, however, MBIA Insurance's credit rating dropped to "junk" or "near junk" levels. (*Id.* ¶ 52–57.)

### 2. Regulatory Approval

Prior to engaging in the challenged transaction, Defendants received the approval of the New York State Insurance Department. Defendants initially applied for approval December 5, 2008. (Decl. of Jonathan D. Siegfried in Supp. of Defs.' Mot. Ex. A (Letter from Michael Moriarty, Deputy Superintendent for Property and Capital Markets, State of New York Insurance Department, to Ram Wertheim, General Counsel, MBIA Inc. (Feb. 17, 2009) ("Moriarty Letter")) at 1.) The proposal was amended eight times, and ultimately approved by letter dated February 17, 2009. (*Id.*)

The letter approved each aspect of the challenged transactions. Specifically, the letter approved the $1,147 billion dividend pursuant to N.Y. Ins Law. § 4105(a) (*id.* at 6), the $938 million stock redemption pursuant to N.Y. Ins Law. § 1411(d) (*id.*), and the reinsurance transaction pursuant to N.Y. Ins. Law. §§ 1308, 6906, and 1505 (*id.* at 7–8). As indicated in the Insurance Department's letter, the approval was premised on the presumptive truthfulness of Defendants' submissions. (*Id.* at 6–8.)

### B. Procedural History

Plaintiffs commenced this action by filing a complaint on March 11, 2009. Defendants moved to dismiss on May 6, 2009, and the motion was fully submitted on May 26, 2009. The Court held oral argument on Defendants' motion to dismiss on December 21, 2009.

### II. DISCUSSION

### A. Abstention

Defendants argue that the Court should abstain from exercising jurisdiction under doctrines articulated in three Supreme Court cases: *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). As explained herein, the Court will not abstain.

### 1. *Burford*

■■■ The *Burford* abstention doctrine provides that a federal court sitting in equity should not interfere with state administrative agencies

> (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (internal quotation marks omitted). In evaluating whether the exercise of federal review would be disruptive of state efforts to establish coherent policy, district courts should consider "(1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern."

*Hachamovitch v. DeBuono,* 159 F.3d 687, 697 (2d Cir.1998).

Defendants rely on *Levy v. Lewis,* 635 F.2d 960 (2d Cir.1980), in which the Second Circuit held that *Burford* abstention was warranted in light of New York's "complex administrative and judicial system for regulating and liquidating domestic insurance companies." *Id.* at 963. The Second Circuit has since instructed, however, that *Burford* abstention is not appropriate simply because a decision of the Superintendent of Insurance might be implicated. Distinguishing *Levy* in *Alliance of American Insurers v. Cuomo,* 854 F.2d 591 (2d Cir.1988), the Second Circuit explained:

> The cases the lower court relied upon all involved ongoing state judicial proceedings regarding the Superintendent's power to declare these insurers insolvent and subject them to centralized state receivership. In contrast, this action is not a liquidation case. There is no challenge to a state administrative or judicial order made pursuant to state law. This case does not involve the federal courts in disrupting any ongoing state judicial or administrative proceedings. No unclear state laws, issues, or rulings are implicated.... Prior cases recognizing the need for federal courts to abstain from interfering with the Superintendent's exercise of authority over insolvent insurance companies are simply not controlling.

*Id.* at 600.

Because this case does not involve an ongoing administrative determination or an insurance company in liquidation, *Levy* is weak support for exercising *Burford* abstention. Rather, as this case involves a challenge to a transaction approved by the Superintendent approximately one year ago, there is little risk of interfering with an ongoing state administrative proceeding, and *Burford* abstention is not appropriate on these facts.

### 2. *Colorado River*

■■■ Under *Colorado River,* a district court may abstain from exercising jurisdiction in favor of a parallel proceeding in state court. While the Second Circuit has identified numerous factors relevant to determining whether abstention is appropriate under this doctrine, the threshold requirement is that there be a substantial identity of parties between the state and federal actions. The Circuit has clearly said that "[s]imilarity of parties is not the same as identity of parties," *Cuomo,* 854 F.2d at 603, and the scant Second Circuit authority cited to the Court at oral argument does not counsel otherwise.

None of the plaintiff banks in *ABN Amro Bank N.V. v. Dinallo,* No. 601846/09 (N.Y.Sup.Ct.) is a plaintiff here, and none of the plaintiffs here is a plaintiff in the state action. Moreover, even if there were identity of parties, the Court is not persuaded that the relevant factors "weigh heavily" in favor of abstention. Specifically, the federal action was filed before the *ABN Amro* action, the federal action involves substantive claims routinely heard in federal court, both federal and state forums are equally convenient to the parties, and neither action has asserted jurisdiction over a *res. See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Accordingly, abstention under *Colorado River* is not warranted.

### 3. *Thibodaux*

■■■ Under the *Thibodaux* abstention doctrine, a district court may abstain from exercising diversity jurisdiction to avoid deciding an unclear and important issue of state law bearing upon sovereign prerogative. *Thibodaux,* 360 U.S. at 27–28, 79 S.Ct. 1070. Defendants argue that *Thibo-*

*daux* abstention is appropriate on these facts, in light of both the unclear contours of New York's collateral attack doctrine and the importance of insurance regulation to New York State. Plaintiffs, in contrast, argue that federal courts sitting in diversity routinely hear fraudulent conveyance claims similar to those brought here.

Regulation of the insurance industry is undoubtedly an important state function, and it is true that the contours of New York's collateral attack doctrine have not been well defined. Nevertheless, the Court concludes below that even when the collateral attack doctrine is given its broadest reading, dismissal on collateral attack grounds is not appropriate at this stage of the proceedings. Thus, if the proper application of collateral attack doctrine remains unclear following discovery in this matter (and following any developments in the *ABN Amro* action), Defendants are surely free to raise *Thibodaux* abstention as part of a motion for summary judgment.

### B. Collateral Attack Doctrine

In addition to arguing that the Court should abstain from hearing the merits of this case, Defendants also argue that the Court should dismiss the action pursuant to New York's collateral attack doctrine.

### 1. Applicable Law

■ Article 78 of New York's Civil Practice Law and Rules ("CPLR") provides for a special proceeding against an administrative body or officer. *See* N.Y. CPLR §§ 7801–7806. New York courts have therefore articulated a robust "collateral attack doctrine," which provides that administrative decisions may only be challenged through Article 78, rather than through a plenary lawsuit. Defendants argue that, pursuant to this doctrine, Plaintiffs may not bring this plenary lawsuit challenging the determination of the Superintendent. Plaintiffs disagree and contend that the collateral attack doctrine does not bind parties who lacked an opportunity to be heard before the Superintendent.

■ When the doctrine is given its broadest reading, it holds that claims must be dismissed as a collateral attack on the decision of the Superintendent if they "seek[ ], indirectly, to challenge the sufficiency of a Plan which was approved by the Superintendent." *Shah v. Metro. Life Ins. Co.*, Nos. 108887/00, 601181/00, 2003 WL 728869, at *13 (N.Y.Sup.Ct. Feb. 21, 2003). Even where a claim challenges the sufficiency of a plan approved by the Superintendent, however, the preclusive effect of the Superintendent's decision is necessarily limited by the scope of the Superintendent's review. As the First Department explained in *Fiala v. Metropolitan Life Insurance Co.*, 6 A.D.3d 320, 776 N.Y.S.2d 29, 31 (2004),

> defendants have not established the preclusive effect of the Superintendent's determination with respect to plaintiffs' claim [that Armstrong Tire and Rubber received preferential treatment] since there is no indication that the Superintendent was aware of the alleged excessive allocation at the time he passed upon the Plan. If there is evidence that the Superintendent was aware of this, defendants may move for summary judgment.

In other words, plaintiffs cannot be precluded from litigating an issue upon which the Superintendent did not pass.

■ Although the collateral attack doctrine lacks a direct analogue in federal practice, as a form of preclusion, it is comparable to res judicata or collateral estoppel, both affirmative defenses under Federal Rule of Civil Procedure 8(c). While Federal Rule of Civil Procedure 8(b)(1)(A) generally provides that affir-

mative defenses must be asserted in an answer—rather than by a motion to dismiss—a court may grant a motion to dismiss on preclusion grounds where "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir.2000). Otherwise, such defenses must be asserted in an answer and proven either on summary judgment or at trial. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir.2004).

### 2. Analysis

■ In this case, the parties disagree significantly about the scope of the Superintendent's approval. According to Defendants, "the transactions which this Court is being asked to declare null and void and to set aside were in fact all approved by the superintendent of insurance and the department of insurance." (Oral Arg. Tr. at 4:19–22.) Defendants further contend that, in granting his approval, the Superintendent "stands in the shoes of the policyholders" and "see[s] whether the transaction is fair to policyholders." (*Id.* at 30:11–14.) Plaintiffs, by contrast, allege that the Superintendent "simply gave a group of approvals with respect to various aspects of the transaction" (*id.* at 78:11–12), but that he did not pass upon the overall fairness of the integrated transaction. Plaintiffs also state that the Superintendent did not make any finding with respect to whether Defendants intended to defraud the policyholders. (*Id.* at 76:19–23.)

■ These significant disputes regarding the scope of the Superintendent's approval prevent the Court from resolving the collateral attack defense via a motion to dismiss. While the Court may take judicial notice of the Superintendent's approval letter, it cannot take judicial notice of the truth of the matters asserted by the Superintendent in the *ABN Amro* litigation. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.1991) ("[C]ourts routinely take judicial notice of documents filed in other courts ... not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

Based solely on the approval letter, and without the benefit of any discovery, the scope of the Superintendent's approval is insufficiently clear for the Court to hold that Plaintiffs' claims must fail as a matter of law. Defendants may instead raise the collateral attack defense at summary judgment, as *Fiala* contemplates.[3] *See* 776 N.Y.S.2d at 31.

### C. Failure to State a Claim

■ Finally, Defendants allege that the Complaint fails to state a claim even absent application of the collateral attack doctrine. The Court holds otherwise.

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), Plaintiffs must allege "enough facts to state a claim to

---

**3.** At oral argument, Defendants all but conceded that the Court cannot determine the preclusive effect of the Superintendent's determination solely by reference to the Superintendent's approval letter:

THE COURT: How am I in a position to know whether the superintendent made the findings that you say he made or whether he made only the findings that your adversary says he made?

MR. SIEGFRIED: Your Honor ... what I would say to you, you now have, with the superintendent's brief, the superintendent's position as to what he did or didn't consider and his statements that this is a collateral attack, that having had the opportunity to look there at their pleading, he said, I looked at and considered all of the issues that they have raised.
(Oral Arg. Tr. at 85:4–15.)

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

With respect to Count I, for fraudulent conveyance under N.Y. D.C.L. § 276, the Complaint sufficiently pleads that Defendants made a conveyance (Compl. ¶ 38), with intent to defraud (*id.* ¶¶ 46–49). *See Cadle Co. v. Newhouse,* No. 01 Civ. 1777(DC), 2002 WL 1888716, at *6 (S.D.N.Y. Aug. 16, 2002). With respect to Count II, for constructive fraudulent conveyance under N.Y. D.C.L. § 273, the Complaint sufficiently pleads a conveyance (Compl. ¶ 38), without consideration (*id.* ¶¶ 72, 77), that rendered MBIA insolvent (*id.* ¶ 46). *See Lippe v. Bairnco Corp.,* 249 F.Supp.2d 357, 376 (S.D.N.Y.2003). Finally, with respect to Count III, for breach of the implied covenant of good faith and fair dealing, the Complaint adequately pleads that the central purpose of MBIA's insurance policies is to provide credit enhancement (Compl. ¶¶ 12, 31) and that Defendants undertook their reorganization knowing the deleterious effect that it would have on their credit rating (*id.* ¶ 11). *See Dweck Law Firm, L.L.P. v. Mann,* 340 F.Supp.2d 353, 358 (S.D.N.Y.2004). Accordingly, Defendants' motion to dismiss the Complaint for failure to state a claim is denied.

### III. CONCLUSION

For the foregoing reasons, the Court declines to abstain from exercising jurisdiction over this case and denies Defendants' motion to dismiss. The parties ARE HEREBY ORDERED to submit a proposed case management plan to my chambers by March 9, 2010. A template for the case management plan is available at http://www1.nysd.uscourts.gov/judge_info.php?id–99.

The Clerk of the Court is respectfully directed to terminate the motion located at Doc. No. 19.

SO ORDERED.