[916 NYS2d 12]

ABN AMRO Bank, N.V., et al., Respondents, v MBIA Inc. et al., Appellants.

First Department, January 11, 2011

238

**APPEARANCES OF COUNSEL**

*Kasowitz, Benson, Torres & Friedman LLP*, New York City (*Marc E. Kasowitz, Daniel R. Benson, Aaron H. Marks, Albert S. Mishaan* and *Kenneth R. David* of counsel), for appellants.

*Sullivan & Cromwell LLP*, New York City (*Gandolfo V. Di-Blasi, Michael T. Tomaino, Jr.* and *Brian T. Frawley* of counsel), for respondents.

*Simpson Thacher & Bartlett LLP*, New York City (*David W. Ichel, Barry R. Ostrager, Joseph M. McLaughlin, Patrick T. Shilling* and *Seth M. Kruglak* of counsel), for amici curiae.

**OPINION OF THE COURT**

Freedman, J.

Plaintiffs are institutions that hold insurance policies issued by defendant MBIA Insurance Corporation (MBIA Insurance), which along with the other defendants form a conglomerate. By this plenary action, plaintiffs challenge the restructuring of the conglomerate in 2009, which the Superintendent of the New York State Insurance Department had approved. Plaintiffs claim that the restructuring amounted to a fraudulent conveyance

that left MBIA Insurance undercapitalized and potentially unable to pay out on plaintiffs' future claims on their policies. The complaint asserts causes of action for breach of contract, unjust enrichment, and violation of the Debtor and Creditor Law, and also seeks a declaratory judgment piercing the corporate veil.

Defendants contend in a motion to dismiss the complaint that plaintiffs fail to state causes of action, and that the claims constitute an impermissible collateral attack on the Superintendent's approval of the restructuring, which plaintiffs can only challenge in the CPLR article 78 proceeding that they have also commenced. The motion court denied defendants' dismissal motion and we reverse.

The following is not in dispute: Before the restructuring, MBIA Insurance was the wholly-owned subsidiary of defendant MBIA Inc., a publicly traded holding company, and defendant MBIA Insurance Corp. of Illinois (MBIA Illinois),[1] an essentially dormant company, was the wholly-owned subsidiary of MBIA Insurance. MBIA Insurance, the only active insurer of the three, was licensed under Insurance Law article 69 to offer financial guaranty insurance policies in New York covering securities and other financial instruments held by its policyholders. Under each policy, MBIA Insurance promised to pay the policyholder if the obligor on the covered instrument failed to pay amounts owing on it. Historically, MBIA Insurance had been the world's largest guaranty insurer for municipal bonds and other securities issued by public entities, and its business had exclusively consisted of writing those policies, but in recent years the company had branched out into providing coverage for "structured-finance" products, which are obligations payable from or tied to the performance of pools of assets (such as mortgage-backed securities and collateralized debt obligations). As of the end of 2008, roughly 70% of MBIA Insurance's portfolio consisted of municipal bond policies ($553.7 billion in face amount) and 30% consisted of structured-finance product policies ($233 billion in face amount).

Plaintiffs in this action hold MBIA Insurance policies guaranteeing payment on structured-finance products in plaintiffs' portfolios. With the onset of turmoil in the financial markets in 2007, the risk of payment defaults for structured-finance products increased, as did MBIA Insurance's potential liability under its structured-finance policies. The company's

---

**1.** MBIA Illinois is now known as National Public Finance Guarantee Corporation.

growing exposure caused the rating agencies to downgrade its creditworthiness. MBIA Insurance stopped writing new structured-finance policies as of early 2008.

On February 25, 2008, MBIA Inc. publicly announced its plan to establish separate business entities to operate its "public, structured, and asset management businesses." On December 5, 2008, MBIA Insurance, on behalf of itself and its affiliates, submitted an application to the Superintendent setting forth its plan to restructure defendants' business through a series of transactions, many of which required the approval or non-objection of the Superintendent pursuant to various sections of the Insurance Law.

In its application, which was supplemented and amended a number of times through February 16, 2009, MBIA Insurance proposed the following transactions: First, MBIA Insurance would pay a $1.147 billion dividend to MBIA Inc. Second, MBIA Insurance would redeem about a third of its capital stock from MBIA Inc. and retire it, and in exchange would give MBIA Inc. about $938 million more in cash and securities plus all of the outstanding stock of MBIA Illinois. Third, MBIA Inc. would transfer the approximately $2.27 billion of cash and securities it had received from MBIA Insurance for its dividend and stock redemption, along with the stock of MBIA Illinois, to MBIA Inc.'s wholly-owned subsidiary, MuniCo Holdings, Inc. (MuniCo Holdings). The transfer would change MBIA Illinois from a subsidiary of MBIA Insurance to a subsidiary of MuniCo Holdings. Fourth, MuniCo Holdings would capitalize MBIA Illinois by contributing $2.085 million of the cash and securities that it had received from MBIA Inc.

As the final step of the restructuring, MBIA Insurance proposed that MBIA Insurance and MBIA Illinois would enter into a complex reinsurance transaction in which, among other things, MBIA Illinois would reinsure nearly all of MBIA Insurance's policies for municipal bonds and other public finance securities on a "cut-through" basis, meaning that public finance policyholders could claim directly against MBIA Illinois as well as MBIA Insurance. In exchange, MBIA Insurance would pay MBIA Illinois about $3.66 billion, which included about $3 billion in premiums that public finance policyholders had prepaid. Under the proposal, MBIA Illinois would also agree to administer and service all of MBIA Insurance's reinsured policies. The end result of the restructuring was to segregate MBIA Insurance's public finance and structured-finance

portfolios by having the newly-capitalized MBIA Illinois take responsibility for the public finance portfolio, leaving only MBIA Insurance liable for claims under the structured-finance portfolio.

The Superintendent responded to MBIA Insurance's application by letter dated February 17, 2009. After describing the proposed transactions in detail, the Superintendent issued the following determinations, among others: First, the Superintendent approved the MBIA Insurance dividend payment to MBIA Inc. under Insurance Law § 4105 (a), which required the Superintendent to determine that MBIA Insurance would "retain sufficient surplus to support its obligations and writings." Second, the Superintendent approved the stock redemption as "reasonable and equitable" to MBIA Insurance, as required under Insurance Law § 1411 (d).

The Superintendent next addressed aspects of the proposed reinsurance transaction which required his permission or non-disapproval under a number of Insurance Law provisions. Section 1505 (a) and (d) of the Insurance Law provide, in relevant part, that a "domestic controlled insurer" (here, MBIA Insurance) and "any person in its holding company system" (here, MBIA Illinois) may enter into a reinsurance transaction upon 30 days' advance notice to the Superintendent if, after considering (among other factors) "whether [the transaction] may adversely affect the interests of policyholders" (§ 1505 [e]), the Superintendent does not disapprove the transaction. In his letter, the Superintendent specified that, based upon the statutory factors, he did not disapprove. The Superintendent also confirmed that MBIA Insurance would receive full financial credit for the reinsurance arrangement under Insurance Law §§ 1308 and 6906 (a), so that it could release all unearned premium, contingency, and other reserves attributable to the reinsured public finance policies.

For each approval, non-disapproval or other determination in the letter, the Superintendent stated that he relied on the truth of MBIA Insurance's representations in its application and other submissions, on the Superintendent's examination of defendants' financial condition before the restructuring, and on his analysis of defendants' financial condition after the restructuring.

On February 17, 2009, the same day that the Superintendent issued his letter, defendants consummated the restructuring transactions. On February 18, the Superintendent issued a press

release entitled "Department Facilitates, Supervises MBIA Split; Should Add Capacity to Municipal Bond Insurance Market" (available at http://www.ins.state.ny.us/press/2009/ p0902181.htm). The press release announced that the Superintendent had overseen "a transformation of [MBIA Insurance] that effectively splits that company in two, dividing its assets and liabilities between two highly capitalized insurance companies." The Superintendent added that

> "[b]oth [MBIA Insurance] and [MBIA Illinois] will continue to pay all valid claims in a timely fashion, and both entities will have sufficient resources to meet policyholder claims as they come due. Consistent with New York State Insurance Law, the [Superintendent] only approved the transaction after deciding that both companies would have sufficient statutory capital to meet the letter and spirit of the Insurance Law. The review and study process lasted approximately one year."

In May 2009, plaintiffs commenced this action in which they assert fraudulent conveyance claims against defendants under New York's Debtor and Creditor Law §§ 273, 274 and 276. They also assert common-law claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment, and seek a declaration piercing the corporate veil and holding defendants jointly and severally liable under MBIA Insurance's policies. The essence of plaintiffs' allegations is that, through the business restructuring, defendants had siphoned assets worth about $5 billion from MBIA Insurance and transferred them to MBIA Illinois to limit their exposure to "an ongoing financial crisis that has made it increasingly likely that MBIA Insurance will have to pay out billions to [p]laintiffs and other holders of financial guarantee insurance policies written by MBIA Insurance." As a result, plaintiffs claim, MBIA Insurance is insolvent. Plaintiffs asked the trial court to invalidate the transfer of assets out of MBIA Insurance, or alternatively to declare that defendants are jointly and severally liable to plaintiffs under their MBIA Insurance policies. Plaintiffs claimed that MBIA Insurance would be unable to meet its future obligations under their policies, but they did not allege that the company has failed to pay them on any outstanding claims, or even that they have suffered any other monetary damages.

On June 9, 2009, in lieu of answering, defendants moved to dismiss the complaint on the ground that plaintiffs' claims in

this plenary action are impermissible collateral attacks on the Superintendent's approval of the restructuring, which can only be challenged in an article 78 proceeding, and that the claims fail to state causes of action. Six days later, plaintiffs filed an article 78 petition naming the Superintendent and defendants as respondents. Plaintiffs claim that the Superintendent acted arbitrarily and capriciously, abused his discretion, and exceeded his authority by issuing the February 17 letter and making the determinations therein because the restructuring "is not 'fair and equitable' to MBIA Insurance or its structured-finance policyholders." For relief, plaintiffs ask that the February 17 letter be annulled and the Superintendent be directed to disapprove the transactions at issue. The article 78 proceeding was assigned to the same Justice that presides over this action.

By decision and order dated February 17, 2010, as corrected on February 24, 2010, the motion court denied defendants' motion to dismiss the complaint in this action (26 Misc 3d 1223[A], 2010 NY Slip Op 50238[U]). Rejecting the argument that plaintiffs were collaterally attacking the Superintendent's approval, the court held that approval under the Insurance Law did not "immunize" defendants from claims under the Debtor and Creditor Law and the common law. The court also emphasized that the Superintendent had issued the approval letter without giving plaintiffs and other MBIA Insurance policyholders notice or an opportunity to be heard. In addition, the court found that the scope of the Superintendent's review and approval in the letter was unclear, and stated that its ruling did not foreclose defendants from asserting their collateral attack argument in a summary judgment motion after discovery had been conducted. Finally, the court rejected defendants' challenges to the legal sufficiency of plaintiffs' allegations.

The three common-law claims should have been dismissed for failure to state causes of action. For their breach of contract claim, plaintiffs allege that MBIA Insurance breached an implied covenant of good faith and fair dealing in its insurance policies. Plaintiffs do not claim that MBIA Insurance has failed to make any payment due under the policies, but instead contend that the company has frustrated an implicit purpose of obtaining the policies, namely "to enhance the value and credit rating" of the covered structured-finance products. However, since this alleged purpose is nowhere reflected in the policies, it cannot serve as the basis for a claim of breach of contract or breach of the implied covenant of good faith and fair dealing (*see National*

*Union Fire Ins. Co. of Pittsburgh, Pa. v Xerox Corp.*, 25 AD3d 309, 310 [2006], *lv dismissed* 7 NY3d 886 [2006] [covenant of good faith and fair dealing cannot be construed so broadly as to create independent contractual rights]). The dissent opines that plaintiffs state a claim by alleging that the restructuring increased the chance of default on the insurance policies, but given that no default has occurred and no monetary damages are claimed, no breach of a specific contractual provision has been made out.

█ The claim seeking a declaration piercing the corporate veil and holding defendants jointly and severally liable also fails. As noted, plaintiffs do not allege that they have suffered injury because MBIA Insurance has not paid any of its obligations under the insurance policies. Rather, plaintiffs seek a declaratory judgment that, should the obligors under their insured securities default in the future, then plaintiffs may look to MBIA Inc. and MBIA Illinois to satisfy their insurance claims. In effect, plaintiffs seek an advisory opinion premised on future events that are beyond defendants' control and thus are speculative. This is not the proper subject of a declaratory judgment claim (*see Cuomo v Long Is. Light. Co.*, 71 NY2d 349, 354 [1988]; *Uhlfelder v Weinshall*, 47 AD3d 169, 182 [2007]). Moreover, the basis for any declaratory judgment would be a finding that the restructuring was a fraudulent conveyance, in direct conflict with the Superintendent's determinations.

Plaintiffs also fail to allege particularized statements detailing fraud or other corporate misconduct that would warrant piercing the corporate veil, especially since defendants were formed for legal purposes and engaged in legitimate business (*see Sheridan Broadcasting Corp. v Small*, 19 AD3d 331, 332-333 [2005]). Plaintiffs do not claim, for instance, that any of defendants were the mere alter egos of another or that the corporate formalities were disregarded. Plaintiffs complain of the actions of the defendant corporations, but do not claim that any of them were not legitimate entities organized for legitimate purposes. Thus, plaintiffs' allegations are insufficient to make out a claim that MBIA Inc., through its domination of MBIA Insurance, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against plaintiffs "such that a court in equity will intervene" (*id.* at 333; *see also Ward v Cross County Multiplex Cinemas, Inc.*, 62 AD3d 466 [2009]).

█ Plaintiffs also fail to state a cause of action for unjust enrichment, a quasi-contractual claim based on the principle

that a person should not be allowed to enrich himself or herself at the expense of another (*see IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132, 142 [2009]). Plaintiffs do not allege that MBIA Insurance has conferred some benefit upon MBIA Inc. and MBIA Illinois at plaintiffs' expense. Rather, their contention is that those companies hold assets that, "in equity and good conscience, should be returned to MBIA Insurance," which is insufficient to allege an unjust enrichment claim (*see IDT Corp.*, 12 NY3d at 142).

The remaining causes of action, under the Debtor and Creditor Law, should have been dismissed as improper collateral attacks on the determinations that the Superintendent made in the exercise of his regulatory authority. "The Superintendent of Insurance, as the head of the Insurance Department of the State of New York, has been given full authority to supervise and regulate the business of insurance in this State" (*Blue Cross & Blue Shield of Cent. N.Y. v McCall*, 89 NY2d 160, 163 [1996]; *see also* Insurance Law §§ 201, 301). The Superintendent periodically examines the affairs of every insurer doing business in New York (Insurance Law § 309), and upon determining that an insurer lacks sufficient assets to honor its commitments to policyholders, the Superintendent may initiate insolvency proceedings under article 74 of the Insurance Law (*see Corcoran v Ardra Ins. Co.*, 156 AD2d 70, 73 [1990], *affd* 77 NY2d 225 [1990], *cert denied sub nom. Ardra Ins. Co. v Curiale*, 500 US 953 [1991]).

The appropriate vehicle for challenging a determination by the Superintendent is a proceeding brought under CPLR article 78 (*see* CPLR 7801; Insurance Law § 326 [specifying that determinations of the Superintendent are subject to judicial review in an article 78 proceeding]; *Matter of City of New York [Grand Lafayette Props. LLC]*, 6 NY3d 540, 547 [2006]; *Sohn v Calderon*, 78 NY2d 755, 767 [1991]; *Matter of Lewis Tree Serv. v Fire Dept. of City of N.Y.*, 66 NY2d 667 [1985]). A plenary action that seeks the overturn of the Superintendent's determination, or challenges matters that the determination necessarily encompasses, constitutes "an impermissible 'indirect challenge' " to that determination (*Fiala v Metropolitan Life Ins. Co.*, 6 AD3d 320, 321 [2004], quoting *Chatlos v MONY Life Ins. Co.*, 298 AD2d 316, 317 [2002], *lv denied* 99 NY2d 504 [2003]). In *Fiala*, this Court upheld the dismissal of statutory and common-law claims that policyholders had brought against the issuing insurance company and its directors for consummating the

company's conversion, or "demutualization," from a mutual life insurance company to a domestic stock life insurance company, after the Superintendent had approved the demutualization plan under Insurance Law § 7312 (6 AD3d at 321-322). This Court found that the dismissed claims constituted impermissible collateral attacks on the Superintendent's determination.[2]

The attempt to distinguish *Fiala* on the ground that the Superintendent approved the demutualization plan after notice to policyholders and a public hearing is not sound, given that the application and approval process for the restructuring did not violate lawful administrative procedure. In any event, plaintiffs have not been deprived of the opportunity to be heard, since their article 78 proceeding enables them to challenge the Superintendent's approval and the restructuring. The dissent's concern that, without notice, plaintiffs might have missed the deadline for filing the article 78 proceeding is not relevant here.

By their first, second and third causes of action, plaintiffs allege that the restructuring was a fraudulent conveyance under Debtor and Creditor Law § 273 because MBIA Insurance did not receive fair consideration for transferring its assets, under Debtor and Creditor Law § 274 because the transfer left MBIA Insurance with unreasonably small capital, and under Debtor and Creditor Law § 276 because defendants actually intended to hinder, delay or defraud MBIA Insurance's structured-finance policyholders. These allegations directly conflict with the Superintendent's determination, based on an analysis of defendants' financial condition after the restructuring, that MBIA Insurance would retain "sufficient surplus to support its obligations and writings" and that the transaction was fair to MBIA Insurance's policyholders. Further, plaintiffs seek to reverse the dividend, stock redemption and reinsurance transactions that comprise the restructuring, notwithstanding that the Superintendent specifically approved those transactions. Accordingly, the only appropriate vehicle for plaintiffs' claims is their proceeding pursuant to CPLR article 78.

The dissent contends that, because plaintiffs seek damages or a declaration that defendants are jointly and severally liable,

---

**2.** The motion court's assertion that in *Fiala*, this Court only upheld the dismissal of claims alleging that the insurer defendants violated provisions of the Insurance Law was mistaken. This Court also upheld the dismissal of claims for breach of contract, breach of fiduciary duty and fraud as impermissible collateral attacks on the Superintendent's determination (*Fiala*, 6 AD3d at 322).

they raise matters that the Superintendent did not consider. But since plaintiffs are not claiming that MBIA Insurance presently owes them any payment under the structured-finance policies and have not suffered any damages, they neither seek any monetary relief nor state a viable cause of action for a declaratory judgment. Moreover, all of plaintiffs' allegations in the complaint necessarily conflict with the Superintendent's broad determination that the restructuring is fair to MBIA Insurance policyholders and that the company remains solvent.[3]

The dissent also claims that the allegation that the restructuring was a fraudulent conveyance would not conflict with the Superintendent's determination because the MBIA Insurance application was submitted and the determination was issued before the restructuring (i.e., the allegedly fraudulent conveyance) took place. But that contention is belied by the near-simultaneity of these events and the substance of the determination. MBIA Insurance last supplemented its application on February 16, 2009, the Superintendent issued its determination that the restructuring transactions would be fair to defendants on February 17, and the transactions occurred later the same day.

Finally, plaintiffs never claim, as the dissent maintains, that defendants deliberately misled the Superintendent about their finances and the effect of the restructuring to obtain the Superintendent's approval. At most, plaintiffs allege that while MBIA Inc. has "claimed publicly that its internal projections show that MBIA Insurance is still solvent," it admits in other public filings that such projections are the result of "an inherently uncertain process" and that there was no assurance that its estimates were accurate. If plaintiffs are contending that the Superintendent based his determination on bad information and projections, they should explore the factual bases for the determination in the article 78 proceeding to which the Superintendent is a party.

Accordingly, the orders of the Supreme Court, New York County (James A. Yates, J.), entered February 18, 2010, March 2, 2010 and March 5, 2010, which denied defendants' motion to dismiss the complaint, should be reversed, on the law, with costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

---

**3.** Since the Superintendent's determination about the restructuring is comprehensive, the analysis of the United States District Court in *Aurelius Capital Master, Inc. v MBIA Ins. Corp.* (695 F Supp 2d 68 [2010]) does not provide a basis for maintaining this action.

ABDUS-SALAAM, J. (dissenting in part). I would modify, on the law, only to the extent of dismissing the cause of action for unjust enrichment, and would otherwise affirm.

This action alleges fraudulent conveyances under New York's Debtor and Creditor Law, breach of contract and unjust enrichment. Plaintiffs hold financial guaranty insurance policies issued by defendant MBIA Insurance Corporation (MBIA Insurance), a wholly owned subsidiary of MBIA Inc., that cover a wide variety of "structured-finance" products, such as mortgage-backed securities. Under the policies, MBIA Insurance unconditionally and irrevocably promised to make payments if the obligors on the insured underlying instruments failed to pay. In December 2008, MBIA Inc. submitted an application to the New York State Insurance Department that sought approval to carry out various transactions as part of a restructuring. In February 2009, the Insurance Department issued a letter approving and/or not disapproving and/or not objecting to certain aspects of the proposal. The application was not made upon notice to plaintiffs or any other policyholders of MBIA Insurance.

The restructuring involved an integrated series of related-party transfers, including MBIA Insurance paying a $1.147 billion dividend to MBIA Inc.; MBIA Insurance transferring $938 million of cash and securities, as well as 100% of the common stock of MBIA Illinois (a wholly-owned and controlled subsidiary of MBIA Insurance) to MBIA Inc.; and MBIA Inc. transferring the cash and securities received from MBIA Insurance to MBIA Illinois.[1]

In what plaintiffs describe as one of the largest fraudulent conveyances in history, involving more than $5 billion in assets, plaintiffs allege that "[i]n an unlawful attempt to escape MBIA Insurance's coverage obligations to [p]laintiffs and other policyholders, [d]efendants executed a series of fraudulent conveyances, in breach of MBIA Insurance's contracts, to transfer MBIA Insurance assets into MBIA Illinois—an entity that [d]efendants structured to be free from liabilities or other obligations to [p]laintiffs." Plaintiffs further allege that defendants intentionally "ensured that, regardless of the fate of MBIA Insurance, MBIA Inc. will continue to own (and its senior management will continue to be handsomely paid to operate) a new insurance business financed using assets stripped out of

---

1. Plaintiffs allege that in the fraudulent restructuring, MBIA Illinois became a wholly owned and controlled subsidiary of another entity that, in turn, is a wholly owned and controlled subsidiary of MBIA Inc.

MBIA Insurance and shielded from its creditors" and that MBIA Inc.'s CEO publicly acknowledged that one of the restructuring objectives "was to weaken MBIA Insurance so much that structured-finance policyholders like [p]laintiffs would be pressured to 'cut a settlement today' and surrender their policies for a fraction of their former values."

Plaintiffs allege that the restructuring left MBIA Insurance undercapitalized and insolvent; that the improperly transferred assets are no longer available to pay claims of plaintiffs and other structured-finance policyholders, exposing them to potentially billions of dollars of losses; and that the restructuring drove MBIA Insurance's credit rating from investment grade to six steps below investment grade into junk territory. The complaint seeks to set aside the allegedly fraudulent transfers or, in the alternative, a declaration that MBIA Inc., MBIA Insurance and MBIA Illinois are jointly and severally liable to plaintiffs under plaintiffs' insurance policies, or an award of damages.

The motion court correctly rejected defendants' argument that this action must be dismissed as a collateral attack on the Superintendent's determination to approve and/or decline to disapprove the transactions. While defendants assert, and the majority agrees, that plaintiffs' attempt to have the restructuring transactions set aside is an impermissible collateral attack on the Superintendent's actions, as noted above, plaintiffs also seek damages or, alternatively, a declaration that defendants are jointly and severally liable to plaintiffs under the policies. This alternative demanded relief concerns matters that clearly were not considered or passed upon by the Superintendent, and may be outside the scope of any review that would be undertaken by the Superintendent and beyond the Superintendent's authority. Indeed, no financial determination by the Superintendent would be dispositive of the causes of action pursuant to the Debtor and Creditor Law because the timing of the relevant financial analysis is distinct. The restructuring application was filed with the Superintendent in December 2008 and the determination issued in February 2009, prior to the alleged fraudulent conveyances, whereas "[u]nder traditional fraudulent conveyance rules, the solvency test is to be conducted at the time of the conveyance" (*In re Best Prods. Co., Inc.*, 168 BR 35, 54 [SD NY 1994], *affd* 68 F3d 26 [2d Cir 1995]).

Additionally, plaintiffs allege that defendants misled the Superintendent regarding defendants' financial condition and the

impact that these transactions would have on MBIA Insurance and its policyholders. While the majority notes that plaintiffs neither specifically make this allegation nor name the Superintendent as a party to this action, it is evident from a reading of the allegations of the complaint and the record in opposition to the motion to dismiss that this is one of the claims. For example, plaintiffs allege that ''MBIA Inc.'s projections have been demonstrably unreliable in the past . . . MBIA Insurance's loss estimates on multi-sector collaterized debt obligations increased from $1.7 billion on December 31, 2008 to $1.9 billion as of March 31, 2009.'' MBIA Inc. filed its restructuring application in December 2008 and the Superintendent issued his determination in February 2009, the time frame identified by plaintiffs as when the debt obligations projected by MBIA Inc. were significantly underestimated.

The Superintendent's determination expressly states, several times, that the approvals were issued in reliance on the truth of the representations and submissions of defendants. The majority's quibble that plaintiffs don't specifically allege that defendants deceived the Superintendent elevates form over substance. In determining a motion to dismiss pursuant to CPLR 3211, the court must ''accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory'' (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]).

The salient point here is that it does not follow, as the majority posits, that because the Superintendent's determination about the restructuring was ''comprehensive,'' this action is an impermissible collateral attack on that determination, when plaintiffs have alleged, for example, that MBIA Inc.'s loss estimates on debt obligations, relied upon by the Superintendent, were unreliable and grossly inaccurate. There is no proof at this stage of the litigation, in the context of a CPLR 3211 motion addressed to the pleading, that the Superintendent was aware of the alleged misrepresentations and violations of the Debtor and Creditor Law that purportedly occurred here (*see Fiala v Metropolitan Life Ins. Co.*, 6 AD3d 320, 321 [2004]). Here, in contrast to *Fiala*, none of the causes of action are properly dismissed pursuant to CPLR 3211. As was noted by the District Court in *Aurelius Capital Master, Inc. v MBIA Ins. Corp.* (695 F Supp 2d 68 [SD NY 2010]), a case similar to this one, brought as a class action by other policyholders against the MBIA defendants concerning the same allegedly fraudulent

conveyances, "[e]ven where a claim challenges the sufficiency of a plan approved by the Superintendent, . . . the preclusive effect of the Superintendent's decision is necessarily limited by the scope of the Superintendent's review" (*id.* at 74). In *Aurelius*, the District Court concluded that

> "[b]ased solely on the approval letter, and without the benefit of any discovery, the scope of the Superintendent's approval is insufficiently clear for the Court to hold that Plaintiffs' claims must fail as a matter of law. Defendants may instead raise the collateral attack defense at summary judgment, as *Fiala* contemplates" (*id.* at 75).

While defendants assert that the Superintendent contemplated all of plaintiffs' allegations in making his determination, defendants have not demonstrated that the Superintendent took into account the issues raised by plaintiffs, especially considering that plaintiffs had no opportunity to be heard by the Superintendent regarding these transactions. As noted above, the Superintendent has expressly stated that the approvals were issued in reliance on the truth of the representations and submissions of defendants. The policyholders had no notice or opportunity to contest the "truth" of the MBIA defendants' submissions to the Superintendent.

Significantly, in *Fiala* (6 AD3d 320 [2004], *supra* [involving demutualization of an insurance company]), as well as other cases cited by defendants where plenary lawsuits against private parties were dismissed as collateral attacks on an administrative agency's determination, there was notice and a hearing or other opportunity to participate in the process (*see e.g. Steen v Quaker State Corp.*, 12 AD3d 989 [2004] [drilling permit issued by Department of Environmental Conservation]; *Brawer v Johnson*, 231 AD2d 664 [1996] [bank demutualization]; *Matter of East N.Y. Sav. Bank Depositors Litig.*, 145 Misc 2d 620 [1989], *affd* 162 AD2d 251 [1990] [bank demutualization]).

Furthermore, defendants' argument that plaintiffs may only properly raise these claims in the article 78 proceeding which plaintiffs commenced is unavailing. Whether the *Superintendent* had a rational basis for his determination to approve/not disapprove the transactions, based upon the information provided to him by defendants, without any input by plaintiffs, is a distinctly different matter from plaintiffs' allegation in a plenary action that *defendants* committed fraudulent conduct and violated the Debtor and Creditor Law, especially where

plaintiffs claim that the Superintendent was intentionally misled by defendants regarding MBIA Insurance's financial condition and the impact that the transactions would have on MBIA Insurance and its policyholders.

Notably, none of the cases cited by the majority in which an article 78 proceeding was determined to be the sole remedy involved a situation such as the one here, where the agency held no hearing nor afforded affected persons an opportunity to be heard or otherwise provide input regarding the determination. And in *Fiala* (6 AD3d 320 [2004], *supra*), relied upon by the majority, this Court *permitted* the plaintiffs to press the claim that certain defendants had accorded a large policyholder preferential treatment in the course of the demutualization by allocating it excessive shares, "since there [was] no indication that the Superintendent was aware of the alleged excessive allocation at the time he passed upon the Plan" (6 AD3d at 321). While the majority notes that plaintiffs do not claim that the Superintendent violated lawful administrative procedure by failing to provide notice and an opportunity to be heard, this misses the point—that plaintiffs had no notice, and no opportunity to be heard, is pertinent to what was considered by the Superintendent. That plaintiffs have commenced an article 78 proceeding, where the standard of review is limited to whether there was a rational basis for the determination, does not require dismissal of this plenary action, which does not even seek relief from the Superintendent.[2]

Regarding defendants' arguments directed to the sufficiency of the pleading, I agree with the majority's conclusion that plaintiffs have not stated a cause of action for unjust enrichment by alleging that MBIA Inc. and MBIA Illinois should return assets to MBIA Insurance, in that plaintiffs did not pay premiums to MBIA Inc. and MBIA Illinois, and thus cannot allege that these entities have been unjustly enriched at plaintiffs' expense (*IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132, 142 [2009]). However, the remaining causes of action should be sustained.

In asserting the claim for breach of contract premised upon a breach of the implied covenant of good faith and fair deal-

**2.** In the absence of notice of the proceedings before the Superintendent of Insurance, it was merely fortuitous that these plaintiffs learned of the adverse determination within the four-month statute of limitations period. If the majority's position is accepted, the nonparty who learns of an adverse determination after the expiration of the statute of limitations would be left without a remedy.

ing, by alleging, among other things, that MBIA violated the covenant by substantially reducing the likelihood that MBIA Insurance will be able to pay its policyholders, plaintiffs have properly alleged that defendants took steps that "will have the effect of destroying or injuring the right of [plaintiffs] to receive the fruits of the contract" (*Dalton v Educational Testing Serv.*, 87 NY2d 384, 389 [1995] [internal quotation marks and citation omitted]; *see also MBIA Ins. Corp. v Countrywide Home Loans, Inc.*, 2009 NY Slip Op 31527[U], *19 [where in a case *brought by MBIA*, the motion court held that MBIA had adequately stated a claim for breach of the implied covenant of good faith by alleging that defendant "exercised its discretion in bad faith to deprive (plaintiff) of the fruits of the agreements and unfairly shifted the risks of default and delinquencies to MBIA"]).

While the majority concludes that the claim for a declaratory judgment and piercing of the corporate veil must be dismissed on the ground that it seeks an advisory opinion on future events that may never occur, the cases cited by the majority involve declaratory judgments regarding the potential implementation of an emergency plan that was subject to future approval by a federal agency (*Cuomo v Long Is. Light. Co.*, 71 NY2d 349 [1988]), and the possibility of being granted a newsstand license and then potentially being required to reimburse a franchisee (*Uhlfelder v Weinshall*, 47 AD3d 169 [2007]). In contrast, the alleged domination of the corporation and abuse of the corporate form has already occurred here.

Furthermore, it is not "necessary that an unsatisfied judgment first be obtained to pierce the corporate veil." (*Chase Manhattan Bank [N.A.] v 264 Water St. Assoc.*, 174 AD2d 504, 505 [1991]; *see also Ross v Stuart Intl.*, 275 AD2d 650 [2000].) Plaintiffs have made "sufficient allegations to sustain a cause of action to pierce the corporate veil by alleging that the individual defendant dominated and controlled the corporation and caused the corporation to make fraudulent conveyances" (*Chase Manhattan Bank [N.A.] v 264 Water St. Assoc.*, 174 AD2d at 505).

The majority holds that plaintiffs' claim that MBIA Inc. and MBIA Insurance share senior management personnel is insufficient to show MBIA Inc. has abused the privilege of doing business in the corporate form. However, plaintiffs allege much more than domination by MBIA Inc. For example, plaintiffs allege that MBIA Insurance received

"no value whatsoever in exchange for its $1.147 billion dividend of cash and securities paid to MBIA Inc."; that

"MBIA Insurance also received no value whatsoever in exchange for transferring away the additional $938 million and the 100% of MBIA Illinois' common stock that it had owned [and a]lthough MBIA Inc. gave MBIA Insurance shares of MBIA Insurance's own common stock, those shares were worthless pieces of paper to MBIA Insurance because, both before and after this transaction, MBIA Insurance was a wholly owned and controlled subsidiary of MBIA Inc.";

and that as a result of the fraudulent restructuring, "MBIA Illinois now holds claims-paying assets that support the municipal-bond business, but that cannot be reached by structured-finance policyholders such as [p]laintiffs (absent the relief sought in this action)," all in order to enrich MBIA Inc., with resulting injury to plaintiffs.

"The party seeking to pierce the corporate veil must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene" (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 142 [1993]). "Veil-piercing is a fact-laden claim that is not well suited for summary judgment resolution" (*First Bank of Ams. v Motor Car Funding*, 257 AD2d 287, 294 [1999]), much less for resolution on a pre-answer, pre-discovery motion.

MAZZARELLI and SWEENY, JJ., concur with FREEDMAN, J.; TOM, J.P., and ABDUS-SALAAM, J., dissent in part in a separate opinion by ABDUS-SALAAM, J.

Orders, Supreme Court, New York County, entered February 18, 2010, March 2, 2010 and March 5, 2010, reversed, on the law, with costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.